**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE**

| | |
|---|---|
| BIO-LAB, INC., ET AL. | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | )    Ct. No. 24-00118 |
| | ) |
| UNITED STATES, | ) |
| *Defendant,* | )    **NONCONFIDENTIAL VERSION** |
| AND | )    Business Proprietary Information |
| | )    Removed from Brackets on Pages 2- |
| JUANCHENG KANGTAI CHEMICAL CO., LTD. AND | )    9, 16-, 18-21, 23-24 |
| HEZE HUAYI CHEMICAL CO., LTD., | ) |
| *Defendant-Intervenors.* | ) |
| | ) |

**MEMORANDUM OF LAW AND FACT
IN SUPPORT OF PLAINTIFFS' RULE 56.2 MOTION
FOR JUDGMENT ON THE AGENCY RECORD**

James R. Cannon Jr.
Chase J. Dunn
CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave, N.W., Suite 300
Washington, D.C. 20037
(202) 567-2300

*Counsel to Plaintiffs Bio-Lab, Inc., Innovative
Water Care, LLC, and Occidental Chemical
Corporation*

Date:   December 17, 2024

i

## Table of Contents

Page

STATEMENT PURSUANT TO RULE 56.2 ................................................................ 1

    I.   Administrative Determination Under Review ............................................... 1

    II.  Issue Presented and Summary of Argument ................................................ 1

    III.  Request for Relief ........................................................................................ 3

STATEMENT OF FACTS ...................................................................................... 3

STANDARD OF REVIEW ................................................................................... 11

ARGUMENT ....................................................................................................... 12

    I.   Commerce's Decision to Rely on Land-Use Prices Reported by Heze Huayi and Kangtai, Rather Make an Adverse Inference Pursuant to § 1677e(b), Was Not Supported by Substantial Evidence ............................................................. 12

        A. The "Best of Its Ability" Standard Does Not Excuse Inadequate Record Keeping ........................................................................................ 12

        B. The Record Evidence Does Not Adequately Support the Prices Paid Alleged by Heze Huayi and Kangtai ...................................................... 17

            1.   The price paid for land-use rights is not established by bare allegations ..... 17

            2.   There is no record evidence supporting the inference that the sum of the payments provided equals the original purchase price ............................................ 18

            3.   The payment slips do not otherwise support the claimed purchase price ..... 19

            4.   There is no evidence to show that the Payees were the sellers of the land-use rights or lenders providing financing .................................................... 21

    II.  Commerce Should Have Applied an Adverse Inference Pursuant to the Statute and Well-Established Practice ........................................................................ 22

CONCLUSION .................................................................................................... 25

## Table of Authorities

**Page(s)**

**Statutes**

5 U.S.C. § 706 ................................................................................................................. 11-12

19 U.S.C. § 1516a(b)(1)(B) .................................................................................................11

19 U.S.C. § 1677(5)(A) ..........................................................................................................5

19 U.S.C. § 1677(5)(e)(ii) .....................................................................................................19

19 U.S.C. § 1677e(a)(2) ................................................................................................. 12-13

19 U.S.C. § 1677e(b) .....................................................................................................*passim*

19 U.S.C. § 1677e(b)(1) .......................................................................................................13

28 U.S.C. § 2640(b) ..............................................................................................................11

**Court Decisions**

*Alabama Aircraft Industries*, 586 F.3d 1372 (Fed. Cir. 2009) ..........................................24

*Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d 933
(Fed. Cir. 1990) ....................................................................................................................10

*Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467
U.S. 837 (1984) .....................................................................................................................11

*Consol. Edison Corp. v. NLRB*, 305 U.S. 197 (1938) ........................................................12

*Deosen Biochemical Ltd. v. United States*, 301 F. Supp. 3d 1372 (Ct.
Int'l Trade 2018) ...................................................................................................................15

*Elkem Metals Co. v. United States*, 441 F. Supp. 2d 1292 (Ct. Int'l Trade
2006) ......................................................................................................................................24

*Hyundai Electric & Energy Systems Co., Ltd. v. United States*, 578 F.
Supp. 3d 1245 (Ct. Int'l Trade 2022) ...................................................................................15

*Loper Bright Ent. v. Raimondo*, 2024 WL 3208360, __ S. Ct. __(2024). ..................... 11-12

*Matsushita Elec. Indus. Co. Ltd. v. United States*, 750 F.2d 927 (Fed.
Cir. 1984) ..............................................................................................................................12

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ................................................................................ 12-24

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ............................ 13-15, 22

*Sidenor Indus. SL v. United States*, 664 F. Supp. 2d 1349 (Ct. Int'l Trade 2009) ..................................................................................................................15

*SolarWorld Americas, Inc. v. United States*, 962 F.3d 1351 (Fed. Cir. 2020) ..................................................................................................................11

*Tianjin Magnesium Int'l Co. v. United States*, 722 F. Supp. 2d 1322 (Ct. Int'l Trade 2010) ...................................................................................................12

*United States v. Eurodif S.A.*, 555 U.S. 305 (2009) ...................................................11

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ......................................12

**Administrative Determinations**

*Chlorinated Isocyanurates From the People's Republic of China: Countervailing Duty Order*, 79 Fed. Reg. 67424 (Nov. 13. 2014) ..............................16

*Chlorinated Isocyanurates from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2021*, 89 Fed. Reg. 49149 (June 11, 2024) ................................................................................ *passim*

*Chlorinated Isocyanurates From the People's Republic of China: Preliminary Results of the Countervailing Duty Administrative Review and Rescission of Review, in Part; 2021*, 88 Fed. Reg. 85214 (Dec. 7, 2023) ................................................................................................................ 1, 4-5

*Chlorinated Isocyanurates From the People's Republic of China: Preliminary Results of the Countervailing Duty Administrative Review and Partial Rescission; 2022*, 89 Fed. Reg. 100974 (Dec. 13, 2024) ...........................................10

*Glycine from India: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 77552 (Nov. 13, 2023) ...........................................15

*Hand Trucks and Certain Parts Thereof from the People's Republic of China; Final Results of 2005-2006 Administrative Review*, 73 Fed. Reg. 43684 (July 28, 2008) ............................................................................................14, 23

*Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Bar From the United Kingdom*, 67 Fed. Reg. 3146 (Jan. 23, 2002) ................................................................................................... 14-15, 23

NONCONFIDENTIAL
VERSION

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade, Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation (hereinafter "Bio-Lab, IWC, and OxyChem" or "Plaintiffs"), respectfully submit the following memorandum of law and fact in support of their motion for judgment on the agency record.

## STATEMENT PURSUANT TO RULE 56.2

### I.     Administrative Determination Under Review

Bio-Lab, IWC, and OxyChem are domestic producers of chlorinated isocyanurates ("Chlor Isos") and challenge certain aspects of the U.S. Department of Commerce's ("Commerce") final results of administrative review of the countervailing duty order covering Chlor Isos from the People's Republic of China. *See Chlorinated Isocyanurates from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2021*, 89 Fed. Reg. 49149 (June 11, 2024) ("*Final Results*"), Appx0007136-0007137, and accompanying Issues and Decision Memorandum ("IDM"), Appx0007110-0007126; *see also Chlorinated Isocyanurates From the People's Republic of China: Preliminary Results of the Countervailing Duty Administrative Review and Rescission of Review, in Part; 2021*, 88 Fed. Reg. 85214 (Dec. 7, 2023) ("*Preliminary Results*"), Appx0006833-0006835, and accompanying Decision Memorandum ("PDM"), Appx0006776-0006805.

### II.     Issue Presented and Summary of Argument

In the administrative review subject to this appeal, Commerce investigated whether two Chinese producers of Chlor Isos, Heze Huayi Chemical Co., Ltd. ("Heze Huayi") and Juancheng Kangtai Chemical Co., Ltd. ("Kangtai"), benefited from land-use rights provided by the Government of China ("GOC") for less than adequate remuneration ("LTAR"). Commerce requested that the GOC and both respondents provide, *inter alia*, translated copies of any

contracts between the GOC (or a GOC-controlled entity) and the respondents that would establish the price paid and the terms of sale for land-use rights acquired by both companies during the period of review. The GOC refused to respond to Commerce's questionnaire. Although both respondents acknowledged purchasing land-use rights from the GOC, neither company provided the purchase contracts. Both companies alleged that the land-use rights were purchased pursuant to [                    ], but alleged that they had lost, misplaced, or otherwise could not find the contracts.

In the *Final Results*, Commerce acknowledged that the land-use contracts were necessary to validate the purchase price and critical to analyzing whether respondents received land-use rights for LTAR. To determine whether land has been provided for less than adequate remuneration, Commerce generally compares the price paid for the land-use rights from the government with the price for land in market-based transactions. Although Heze Huayi and Kangtai submitted self-selected lists of payments [                              ], they did not submit any direct evidence, such as a contract, of the original purchase price for the land. Commerce found that the payment data was not a substitute for the land-use contracts themselves. Without the contracts, the record lacked evidence demonstrating the terms of sale, including whether the land-use payments included interest expenses, taxes, or other charges that were not included in the benchmark for determining a subsidy. Indeed, without the contracts, there was no documentation to show that the reported payments were actually tied to the land in question, or were consistent with [          ] contracts.

Nevertheless, Commerce concluded that both respondents had "cooperated" to the best of their ability, even though they failed to supply the land-use purchase contracts. Commerce

ignored its practice and binding judicial precedent and ignored Heze Huayi's and Kangtai's

inadequate record keeping and failure to provide the requested documentation.

In sum, the issue presented is whether Commerce's decision to rely on the sum of alleged

payments by Heze Huayi and Kangtai to validate the claimed price of the land-use rights was

supported by substantial evidence and otherwise in accordance with the statute and Commerce

practice.

## III.    Request for Relief

Plaintiffs request that this Court hold Commerce's *Final Results* unsupported by

substantial evidence and remand Commerce's determination with instructions to (1) reconsider

whether record evidence supports the conclusion that Heze Huayi actually paid [

] and Kangtai paid [                    ] pursuant to [            ] contracts for

the purchase of land use rights, and (2) to reconsider its finding that Heze Huayi and Kangtai

cooperated to the best of their ability and to apply an adverse inference pursuant to 19 U.S.C. §

1677e(b) to calculate the net benefit provided by the land-use subsidy program, consistent with

the statute and longstanding practice.

## STATEMENT OF FACTS

The GOC provides land-use rights at preferential rates to certain strategic sectors of the

economy, including the chemical industry. It has specifically identified water treatment

chemicals, such as Chlor Isos, as an "encouraged" industry eligible to purchase land-use rights at

preferential prices. On these grounds, Bio-Lab, IWC, and OxyChem, filed a new subsidy

allegation in the 2021 administrative review of the countervailing duty order on Chlor Isos

requesting that Commerce investigate whether Heze Huayi and Kangtai benefited from the

provision of land and land-use rights for LTAR during the POR. *See generally* Letter from

Petitioners, "Petitioners' Submission of a New Subsidy Allegation" (May 11, 2023),
Appx0001540-0001783.

In response to the new subsidy allegation, Commerce initiated a new subsidy
investigation and issued questionnaires to the GOC, Heze Huayi, and Kangtai. *See* Commerce
Letter, "New Subsidy Allegations" (Nov. 2, 2023), Appx0006639-0006642; Commerce Letter,
"New Subsidy Allegations Questionnaire" ("NSA QRs") (Nov. 2, 2023) (Appx0006643-
0006646 (GOC); Appx0006647-0006651 (Heze); Appx0006652-0006656 (Kangtai)). Commerce
requested that the GOC provide all government laws or regulations (at all levels of government)
pertaining to the provision of land-use rights in effect during the POR. *See id.* The GOC did not
respond to Commerce's questionnaire. *See* Appx0006790.

Separately, Commerce requested that Heze Huayi and Kangtai identify each parcel of
land purchased from the GOC, the price paid for the land-use rights, whether payment was made
in a lump sum or installments, the terms of payment, and the duration of the lease. *See*
Appx0006650-0006651, Appx0006655-0006656. Commerce specifically requested copies of the
land-use certificates and land-use contracts issued by local land-use bureaus. *Id.*

Heze Huayi responded that it had purchased land-use rights for [          ] different parcels
of land from the local government, each with a term of 50 years. *See* Letter from Heze Huayi,
"Heze Huayi NSA Questionnaire Response" (Nov. 14, 2023) ("*Heze NSA IQR*"), Appx0085023-
0085024, Appx0085027. Heze Huayi included an exhibit with three figures allegedly providing
the "price paid for land-use rights" to [       ] different parcels acquired in [

                                    ]. Appx0085027. Heze Huayi did not provide any of the land-
use contracts requested by Commerce. Instead, Heze Huayi admitted that it "currently cannot
locate the land-use right purchase contract" for any of the [          ] parcels of land

notwithstanding the fact that the contracts were [            ] agreements for the purchase of

land with the most recent contract was allegedly entered in [        ]. Appx0085023. In other

words, the company provided no documentation to support the claim that the land-use rights for [

    ] parcels were purchased for [

                                    ]. Appx0085027. Nor did it provide any support

for the claim that the purchase contracts were [            ] contracts. The only claims for which

Heze Huayi offered support were the 50-year duration of the contracts and the area of each

parcel. Appx0085028-0085047.

Kangtai similarly reported that it had purchased land-use rights for [    ] parcel of land

with a term of 50 years from the local government. *See* Letter from Kangtai, "Kangtai NSA

Questionnaire Response" (Nov. 14, 2024) ("*Kangtai NSA IQR*"), Appx0085055, Appx0085059.

Kangtai asserted that it "currently cannot locate the land-use right purchase contracts."

Appx0085055. Kangtai did not provide any factual support for the alleged purchase price for the

land-use rights, [                ], the terms of sale, or that the contract was [

    ] contract. Appx0085059. As did Heze Huayi, Kangtai only provided support for the

50-year duration of the purchase and the area of each parcel. Appx0085061-0085065.

On this record, and without the land-use contracts and despite that it had not even issued

a supplemental questionnaire seeking additional evidence, Commerce issued *Preliminary

Results.* Because the GOC completely failed to respond to the initial questionnaire, Commerce

appropriately made an adverse inference pursuant to 19 U.S.C. §1677e(b) in finding that the

GOC's provision of land-use rights constituted a specific financial contribution within the

meaning of 19 U.S.C. § 1677(5)(A). Appx0006790-0006791. However, with respect to Heze

Huayi and Kangtai, Commerce simply used the unsupported figures provided by the Chinese

producers to calculate the net benefit provided by the below-market land-use rights. Appx0006800. This approach resulted in countervailable subsidy rates of 2.55 percent and 2.33 percent for Heze Huyai and Kangtai, respectively. Appx0006801.

In their initial case brief, Bio-Lab, IWC, and OxyChem argued that Commerce should have applied an adverse inference pursuant to 19 U.S.C. 1677e(b) in calculating a benefit because both Heze Huayi and Kangtai failed to provide the land-use contracts or any other documentation to substantiate the price paid or the terms of the [          ] agreements. *See* Letter from Petitioners, "Case Brief" (Jan. 16, 2024), Appx0085132-0085140. Following briefing and a hearing, Commerce issued supplemental questionnaires to Heze Huayi and Kangtai, again seeking copies of the land-use contracts and other supporting documentation. Letter from Commerce, "Heze Huayi's Supplemental Questionnaire" (Apr. 3, 2024), Appx0085221-0085222; Letter from Commerce, "NSA Supplemental Questionnaire" (Apr. 4, 2024), Appx0085226-0085228.

In response, Heze Huayi again did not provide the contracts. *See* Letter from Heze Huayi, "Heze Huayi 3rd Supplemental Questionnaire Response" (Apr. 17, 2024), Appx0085235. Regarding its methodology to determine the price paid for the land-use rights, Heze Huayi explained that it calculated the price based on "payment slips" and provided a collection of payment slips to show that the sum of these payments equaled the alleged original purchase price. *See* Appx0085235, Appx0085264-0085265, Appx0085266-0085295. The payment slips, however, were unreliable for several reasons.

*First*, Heze Huayi did not provide any external document or means to assess the claim that it owed any amount at all. All of the information submitted to support the price paid for [     ] plots of land consisted of payment slips gathered from Heze Huayi's own records, which

NONCONFIDENTIAL
VERSION

included hand-written entries regarding key information.[1] Appx0085266-0085295. None of the

payment slips identify a contract number, corresponding ledger account, or other reference to the

underlying contract obligation. *Id.* References to [                                    ] are

hand-written and are the only information that would indicate that the payments were related to

land-use or specific parcels. *Id.* The Payee, which may be any of [       ] different entities, is also

hand-written on each slip. *Id.*

  *Second*, notwithstanding that the alleged contract was an [              ] contract, Heze

Huayi provided no evidence to show whether the payments included interest, taxes, insurance, or

any other charges that would be added to the original purchase price. *See* Appx0085023,

Appx0085238-0085295.

  *Third*, the payment slips are only partial screenshots of individual check stubs extracted

from a larger bound collection of documents. *See* Appx0085266-0085295. The slips are not

numbered sequentially, making it impossible to determine whether the list of payments is

complete or whether payments for other obligations have been included. For example, slip [

] follows slip [              ], although both payments were allegedly made [

]. The next slip, [              ] is dated [              ] later, on [              ]. Yet, slip [

] – the very next slip in the sequence – was not used until [                    ]. *See id.*

  *Fourth*, the alleged payments are erratic in terms of the amount of each payment and the

timing of the payment. For example, Heze Huayi's payment summary alleges that payments

were made in amounts of [

]. *See* Appx0085267.

---

[1] Remarkably, Heze Huayi maintains payment slips in bound ledgers dating back to [       ], but it does not maintain contracts for the [              ] RMB purchase of land-use rights.

Then, [                              ], Heze Huayi allegedly made one payment of [

        ], which makes the total [          ] the alleged price for the parcel. *Id.*

    *Fifth*, the payment slips reflected payment to [          ] government entities, including [

                              ] engaged in financing the purchase of land-

use rights. Specifically, the payments slips include payments to [

                              ]. *See* Appx0085266-0085295.

    Kangtai likewise failed to produce a copy of the contract for purchase of land-use rights,

continuing to claim that it "cannot locate the land-use right purchase contracts." Letter from

Kangtai, "Kangtai Supplemental Questionnaire Response" (Apr. 18, 2024), Appx0085326-

0085237. As did Heze Huayi, Kangtai "determined the total amount paid for land-use right based

on the payment slips" and provided a collection of self-selected check stubs to document

payments. *See* Appx0085327, Appx0085331-0085357. These payment slips were marred by the

same critical omissions and inconsistencies just discussed with respect to Heze Huayi.

    *First*, Kangtai provided payment slips from selected pages of its records. Appx0085331-

0085357. Exhibit SQ4-1 consists of [

] showing [          ] payments, supported by payment slips. *Id.* However, the payment slips [

                              ], apparently collected from various different collections of

records. For example, the payment slip dated [                    ] is different in [

                    ] from the slip dated [                         ], and both of these slips

are different in [                          ] from the slips dated [              ] and [

        ]. *Id.* The payment slips on their face indicate that the documents were maintained in

different [          ] and selected from several different sources.

*Second*, neither the subledger nor the payment slips identify a contract number or other reference to the underlying contract obligation. *See id.* The Payee, which is shown [

], cannot be tied to a contract, a response by the GOC, or any other record document regarding the sale of land-use rights. Nor does the Payee appear [

] in every case. *See id.*

*Third*, despite the fact that Kangtai's land-use contract apparently called for [

] payments, there is no evidence to show whether the payments included interest, taxes, insurance, or any other charges that would be added to the original purchase price. *See id.*

*Fourth*, the payment dates are erratic in amount and timing. For example, the "Payment Breakdown" in Exhibit SQ4-1 indicates that the payment amounts varied from [

] and the payments [

]. *See* Appx0085332.

Following Heze Huayi's and Kangtai's responses to the supplemental questionnaires, Commerce established a post-preliminary briefing schedule limited to issues raised in the NSA supplemental questionnaires. *See* Commerce Memorandum, "New Factual Information and Case Brief Deadline" (Apr. 24, 2024), Appx0007064. In response, Bio-Lab, IWC, and OxyChem again argued that Heze Huayi's and Kangtai's refusal to provide the official land-use contracts reflected a profound failure to maintain necessary business records and, therefore, warranted finding that the respondents had not cooperated to the best of their ability. *See* Letter from Petitioners, "Additional Case Brief" (May 6, 2024), Appx0085383-0085394.

In the *Final Results*, Commerce continued to find that without the land-use purchase contracts, the application of "facts available" was appropriate; however, Commerce again refused to make any adverse inference with respect to the information submitted by Heze Huayi

and Kangtai. *See* Appx0007120-0007125. Although, Commerce acknowledged that the land-use

contracts are "*necessary documents needed for Commerce to fully analyze the program,*" and

that the contracts "*are required to confirm the price paid* for the land parcels," it accepted the

respondents' "self-generated information" as sufficient "to confirm the price paid for the land

parcels." Appx0007123 (emphasis added). Instead of conducting a thorough review of the

program in this case, Commerce instead indicated it would "continue to examine this program in

the ongoing review of the *Order* and expect the respondents to be able to provide the requisite

land-use rights purchase contracts to permit Commerce to undertake a complete analysis of a

land for LTAR program." *Id.*[2]

In the end, Commerce's conclusions that utterly unsupported prices submitted by Heze

Huayi and Kangtai were "facts available" or that the respondents "cooperated to the best of their

ability" are unsupported by substantial evidence and contrary to past practice. Commerce

recognized that the land-use rights contracts were needed to fully analyze the subsidy program,

and it recognized that the self-selected payment receipts provided by respondents were not

adequate to tie even alleged payment to the claimed purchase price. Commerce's failure to apply

an adverse inference in calculating a subsidy benefit under the land-use rights for LTAR program

---

[2] This Court may take judicial notice that, to date, neither Heze Huayi nor Kangtai have
submitted their land-use contracts in the 2022 administrative review of the Chlorinated Isos
antidumping order. Nevertheless, on December 13, 2024, Commerce issued preliminary results
based on their data and finding net subsidy rates even lower than the rates in this proceeding. *See
Chlorinated Isocyanurates From the People's Republic of China: Preliminary Results of the
Countervailing Duty Administrative Review and Partial Rescission; 2022*, 89 Fed. Reg. 100974
(Dec. 13, 2024); *see also Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d
933, 940 (Fed. Cir. 1990) (affirming the Court of International Trade's decision to take judicial
notice of a finding in an administrative proceeding).

is inconsistent with the statute, agency practice, and binding judicial precedent from the Court of Appeals for the Federal Circuit.

## STANDARD OF REVIEW

In appeals of countervailing duty determinations, this Court will hold Commerce's determination unlawful if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B); *see also* 28 U.S.C. § 2640(b); *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) (citing the Administrative Procedures Act at 5 U.S.C. § 706). To determine whether Commerce's interpretation of a statue is in accordance with law, this Court applies the standard of review set forth in the APA. *See, e.g., SolarWorld Americas, Inc. v. United States*, 962 F.3d 1351 n.2 (Fed. Cir. 2020). Under the APA, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. Although the courts' legal decision-making formerly followed the two-step framework outlined in *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Supreme Court has recently overruled *Chevron*. *See Loper Bright Ent. v. Raimondo*, 2024 WL 3208360 at *22, — S. Ct. — (2024). In doing so, the Court explained the interpretive framework as follows:

> The APA…codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment. It specifies that courts, not agencies, will decide "all relevant questions of law" arising on review of agency action, § 706 (emphasis added)—even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it. And it prescribes no deferential standard for courts to employ in answering those legal questions.

NONCONFIDENTIAL
VERSION

*Loper Bright*, 2024 WL 3208360 at *12. Stated simply, regardless of any ambiguity in a statute, the Court's duty in applying 5 U.S.C. § 706 is to discern the statute's "best meaning" by "deploying its full interpretive toolkit." *See id.* at *20.

To determine whether the agency's decision is supported by substantial evidence, the Court examines whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Corp. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla" and "must into account whatever in the record fairly detracts from its weight." *Id.* at 477, 488. The substantial evidence standard also requires Commerce to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Tianjin Magnesium Int'l Co. v. United States,* 722 F. Supp. 2d 1322, 1328 (Ct. Int'l Trade 2010) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, (1983)). In sum, substantial evidence review requires the Court to determine whether the evidence and reasonable, evidence-based inferences support Commerce's findings. *See Matsushita Elec. Indus. Co. Ltd. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).

## ARGUMENT

**I.    Commerce's Decision to Rely on Land-Use Prices Reported by Heze Huayi and Kangtai, Rather Make an Adverse Inference Pursuant to § 1677e(b), Was Not Supported by Substantial Evidence**

### A.  The "Best of Its Ability" Standard Does Not Excuse Inadequate Record Keeping

It is well established that Commerce shall rely upon facts otherwise available to fill informational gaps in the record pursuant to 19 U.S.C. § 1677e(a)(2) if an interested party: (1) withholds information that has been requested, (2) fails to provide requested information by the

deadlines established, or in the form and manner requested, (3) significantly impedes the proceeding, or (4) provides information that cannot be verified. The Court of Appeals for the Federal Circuit has confirmed that the "mere failure of a respondent to furnish requested information — *for any reason* — requires Commerce to resort to other sources of information to complete the factual record on which it makes a determination." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003) (emphasis supplied). Indeed, "the focus of {1677e(a)(2)} is a respondent's failure to provide information. The *reason for the failure is of no moment.*" *Id.* (emphasis supplied).

If Commerce determines "that an interested party has failed to cooperate by not acting to the best of its ability to comply with the request for information," it "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b)(1). Although the statute does not define the "best of its ability" standard, the Federal Circuit has confirmed that under this standard a respondent must "do the *maximum* it is able to do" and "put forth its *maximum* effort to provide Commerce with *full and complete answers* to all inquiries in an investigation." *Nippon Steel,* 337 F.3d at 1381-82 (quoting 19 U.S.C. § 1677e(b)) (emphasis supplied). The standard does not "condone inattentiveness, carelessness, or *inadequate record keeping*." *Id.* at 1382-83 (emphasis supplied). Rather, it "assumes that importers are familiar with the rules and regulations that apply to the import activities undertaken and requires that importers, to avoid a risk of an adverse inference determination in responding to Commerce's inquiries…take reasonable steps to *keep and maintain full and complete records* documenting the information that a reasonable importer should anticipate being called upon to produce." *Id.* (emphasis supplied).

13

Consistent with the teaching of *Nippon Steel*, Commerce has repeatedly found that a respondent's inability to provide documents generated in the normal course of business, including contracts, demonstrates inadequate record keeping, warranting a determination that the respondent did not act to the best of its ability. For example, in *Hand Trucks from China* Commerce found that "Taifa fails to meet the *Nippon Steel* standard by its inability to produce any source document to support the accuracy of the 2003 Share Transfer Agreement." More specifically, Commerce found that "Taifa's inability to provide the contract between the parties that it claimed as the basis of payment for the share transfer showed that it did not 'keep and maintain full and complete records documenting the information that a reasonable importer should anticipate being called upon to produce.'" *Hand Trucks and Certain Parts Thereof from the People's Republic of China; Final Results of 2005-2006 Administrative Review*, 73 Fed. Reg. 43684 (July 28, 2008) ("*Hand Trucks from China*"), IDM at Comment 1 (quoting *Nippon Steel,* 337 F.3d at 1382).

Likewise, Commerce has applied adverse inferences to parties that misplace, lose, or fail to maintain information that normally would be kept in the ordinary course of business. In *Stainless Steel Bar from the UK* a party explained that it could not provide cost of sales information because it was "lost." Commerce "questioned how important business and accounting information of this nature can be 'lost' entirely," and explained that this "is the type of information that a company should and would keep in the ordinary course of reasonable business operations." Commerce then concluded that it would

> not accept a situation where parties such as FRSS could impede investigations by claiming to lose data at the outset of investigations, and conveniently hide behind such a claim by saying they cooperated 'as best they can' but the data is 'lost.' In such circumstances, _the Department is entitled to take an adverse inference that the data was not provided because it was damaging to the company's perceived interests_.

_Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Bar From the United Kingdom_, 67 Fed. Reg. 3146 (Jan. 23, 2002) ("_Stainless Steel Bar from UK_"), IDM at Comment 1 (emphasis supplied); _see also Glycine from India: Final Results of Antidumping Duty Administrative Review; 2021-2022_, 88 Fed. Reg. 77552 (Nov. 13, 2023), IDM at Comment 2 (finding AFA appropriate because "Kumar failed to provide the documentary support to establish the reported lack of affiliation with Companies A and B, and failed to explain why it could not provide the requested documentary support").

Consistent with the Federal Circuit's decision in _Nippon Steel_, this Court has affirmed the use of an adverse inference pursuant to 19 U.S.C. § 1677e(b) where parties failed to provide documents requested by Commerce. _See, e.g., Hyundai Electric & Energy Systems Co., Ltd. v. United States_, 578 F. Supp. 3d 1245, 1256-57 (Ct. Int'l Trade 2022) (holding that "{s}ubstantial evidence supports Commerce's determination that HEES did not act to the best of its ability to provide documentation of all service-related revenue"); _Deosen Biochemical Ltd. v. United States_, 301 F. Supp. 3d 1372, 1379 (Ct. Int'l Trade 2018) ("By withholding a requested document despite multiple requests for its production, Plaintiffs failed to act to the best of their abilities."); _Sidenor Indus. SL v. United States_, 664 F. Supp. 2d 1349, 1358 (Ct. Int'l Trade 2009) (affirming application of AFA to a respondent for failure to provide documentation supporting its cost reconciliation).

This approach is particularly appropriate when the respondents are experienced with U.S. trade laws and represented by counsel. Heze Huayi executed land-use agreements in [          ], and Kangtai did the same in [          ]. Appx0085027, Appx0085059. The petition in this case was filed in 2013 and the underlying countervailing duty order was published in 2014. *See Chlorinated Isocyanurates From the People's Republic of China: Countervailing Duty Order*, 79 Fed. Reg. 67424 (Nov. 13. 2014). In the original investigation, though the petitioners did not specifically identify the Land-use Rights for LTAR program, the general Commerce questionnaire asked Heze Huayi and Kangtai to report "any other forms of assistance to your company" including "the amounts, date of receipt, purpose and terms, and answer all questions in the appropriate appendices…." *See, e.g.*, "CVD Investigation of Chlorinated Isos from the PRC (C-570-991), Request for Information," Section III at 16 (PDF 116) (ACCESS Barcode 3160795-01).

Thereafter, in each review from 2014 to the underlying review in this proceeding (2021), the standard Section III questionnaire instructed the respondents to provide details with respect to any direct or indirect subsidy programs:

> Did your government (or entities owned directly, in whole or in part, by your government or any provincial or local government) provide, directly or indirectly, any other forms of assistance to your company between January 1, 2012, and the end of the POR? If so, please describe such assistance in detail, including the amounts, date of receipt, purpose and terms, and answer all questions in the appropriate appendices.

Heze Huayi, "Section III Questionnaire Response" (Apr. 21, 2023), Appx0080226; Kangtai, "Section III Questionnaire Response" (Apr. 21, 2023), Appx0080501-0080502.

As such, Heze Huayi and Kangtai were on notice in 2013 that documents, such as the land-use purchase contracts, were directly relevant to the countervailing duty investigation. Heze

Huayi and Kangtai each stated that it "understands" Commerce could investigate "any other programs" that "potentially confer countervailable subsidies." Appx0080226, Appx0080501-0080502. In these circumstances, there is no excuse for Heze Huayi and Kangtai to "lose" sales contracts for the purchase of land-use rights. Commerce should have invoked 19 U.S.C. § 1677e(b), consistent with the law and the record evidence described below.

### B. The Record Evidence Does Not Adequately Support the Prices Paid Alleged by Heze Huayi and Kangtai

Neither Heze Huayi nor Kangtai submitted the contracts or other purchase agreements showing the amounts paid to the GOC for land-use rights. *See* Appx0007121. Instead, Heze Huayi and Kangtai provided self-generated payment records that were not documents or ledgers maintained by Heze Huayi or Kantai in the ordinary course of business. In response to Commerce's repeated requests for copies of the land-use contracts, both Heze Huayi and Kangtai asserted that they "cannot locate the land-use right purchase contracts." Appx0085023, Appx0085235, Appx0085055, Appx0085326-0085327. Yet, the failure to maintain these records is not "cooperation" for purposes of 19 U.S.C. § 1677e(b). As such, the record as a whole does not establish that the prices alleged by Heze Huayi and Kangtai are correct.

#### 1. *The price paid for land-use rights is not established by bare allegations*

As shown above, the prices paid for the land-use rights are provided in two exhibits responding to the NSA questionnaire. *See* Appx0085027, Appx0085059. The exhibits consist of tables prepared by Heze Huayi and Kangtai, not company documents or records established in the ordinary course of business. Other than a [                    ] series of payment slips, self-selected by respondents from their own records, there is no evidence from the companies' books and records to show that the alleged purchase price in fact was the price paid to the GOC. As

17

important, without the contracts, it is not possible to determine the terms of sale and particularly whether the payment included interest or taxes or other charges and fees in addition to the price paid for the land-use agreement.

### 2. *There is no record evidence supporting the inference that the sum of the payments provided equals the original purchase price*

Both Heze Huayi and Kangtai assert that they entered into [          ] contracts to purchase the land-use rights. *See* Appx0085027, Appx0085059. However, the payment slips (or check stubs) offered by the respondents do not indicate whether the payments, made over a period of years, included interest, taxes, insurance, or other charges or fees. As such, it is not possible to determine whether a simple sum of the payments allegedly made by Heze Huayi and Kangtai substantially overstated the original purchase price.

This factual issue is critical because of the manner in which Commerce calculates the net benefit from land provided at LTAR. As explained in the *Laminated Woven Sacks* case, appended to Commerce's "Standard Land Memo," Commerce subtracts "the price actually paid" for the land sold by an NME government from the benchmark land rate (*i.e.,* the market-economy price for the land in the year of sale). Letter from Petitioners, "Benchmark Information," (Oct. 31, 2023), Appx0082707. The difference between the actual, original purchase price and the benchmark is then allocated to the period of review using a discount rate.

If, however, the original purchase price is unknown, it is not possible to calculate the difference between that price and the market-economy benchmark. Moreover, if the full purchase price is not paid in total on the date of sale, it is not possible to calculate the original price without knowing whether any interest charges are included in the subsequent payment. Indeed, if no interest was charged on the original purchase price, then in addition to a sale of land at LTAR,

there would be an interest-free loan – which is equally subject to the countervailing duty law. *See* 19 U.S.C. § 1677(5)(e)(ii).

### 3. *The payment slips do not otherwise support the claimed purchase price*

Apart from the lack of information concerning interest or other charges included in the payments, the payment slips proffered by Heze Huayi and Kangtai do not show a pattern at all consistent with typical [          ] contracts, either in terms of the amount of the payments or the payment schedule. The data show as follows:

NONCONFIDENTIAL
VERSION

Payment Summary for Heze Huayi

*Source*: Appx0085265.

As shown above, Heze Huayi made [      ] payments with respect to [         ] in [

] on [       ] different dates, in amounts ranging [                            ]. [       ] payments

were made in [        ], which [                          ], followed a [

], in total amounted to [                          ] the total paid for this parcel in [

]. Then, [       ] payment was made in [         ]. And, a final payment was made in [

]. For the other parcels, there is

similarly no [                    ] timing or amount paid.

Turning to Kangtai:

<u>Payment Summary for Kangtai (Exhibit SQ4-1)</u>

*Source*: Appx0085332.

Kangtai's payments are also [                              ] and inconsistent with any [

    ].

### 4. *There is no evidence to show that the Payees were the sellers of the land-use rights or lenders providing financing*

Commerce accepted that the payment slips were evidence of payment with respect to

land-use rights without any basis to conclude that the Payees were the sellers of the parcels

identified by Heze Huayi and Kangtai. *See* Appx0007120-0007125.

Heze Huayi's collection of check stubs shows checks being written to [        ] payees: [

]. Appx0085266-0085295. Heze Huayi's Land-use Right Certificates only identify [                                        ] and only associate this entity with [          ]. Appx0085241, Appx0085247, Appx0085252, Appx0085256, Appx0085261. None of the reported Payees are identified on the other Land-use Right Certificates. *Id.* Indeed the alleged "payments" to the [                                        ], as well as the reference to [                                        ], reasonably indicate that these payments were [          ] not [          ] payments for the purchase of land-use rights. *See id.*

Turning to Kangtai, the payment slips identify the party being paid as [                                        ]. *See* Appx0085334, Appx0085336-0085337, Appx0085339-0085340, Appx0085346-0085350, Appx0085352. The accompanying [                                        ] ledger also included in the exhibit shows the Payee as [                                        ]. Appx0085341. Fundamentally, though, there is no evidence – such as a contract or other verifiable record – that the seller of the land-use rights was [                                        ].

## II.   Commerce Should Have Applied an Adverse Inference Pursuant to the Statute and Well-Established Practice

The Federal Circuit's decision in *Nippon Steel* indicates that "cooperation" for purposes of § 1677e(b) is based on two factors: (1) there must be "an objective showing that a reasonable and responsible {party} would have known that the requested information was required to be kept and maintained under the applicable statutes, rules, and regulations," and (2) there must be a "subjective showing that the respondent under investigation not only has failed to promptly produce the requested information, but further that the failure to fully respond is the result of the

respondent's lack of cooperation in either: (a) failing to keep and maintain all records, or (b) failing to put forth its maximum efforts to investigation and obtain the requested information from its records." *Nippon Steel* at 1382-1383. The submissions by Heze Huayi and Kangtai did not satisfy either criteria.

Commerce does not dispute that Heze Huayi and Kangtai failed to maintain contracts issued in the normal course of business. Nor does it dispute that such contracts were needed to establish key information linking the payment slips to the actual purchase price paid and to determining whether the respondents purchased land-use rights from the GOC for LTAR. *See* Appx0007121-0007124. As shown above, the payment receipts provided by Heze Huayi and Kangtai did not establish that the reported purchases prices are actually the prices paid for the land-use rights. Commerce itself admitted that the payment slips provided by Heze Huayi and Kangtai are "not a substitute for the land-use rights contracts themselves." Appx0007122. Accordingly, the record establishes that the respondents failed to "keep and maintain full and complete records documenting the information that a reasonable importer should anticipate being called upon to produce." *Nippon Steel*, 337 F.3d at 1382.

As noted above, Commerce's longstanding practice is that contracts and other documentation issued in the normal course of business are precisely the kind of information interested parties are obligated to maintain. *See, e.g., Hand Trucks from China*, IDM at Comment 1; *Stainless Steel Bar from UK*, IDM at Comment 1. Not only are land-use contracts essential business records, but when they are [                ] contracts it is common sense that the documents would be maintained as long as the [                              ]. Moreover, Heze Huayi and Kangtai were on notice since 2013 that their land-use contracts entered in [

] could be relevant to establishing whether they received potentially countervailable subsidies. Nevertheless, both parties "lost" the contracts.

In these circumstances, the respondents' failure to "keep and maintain full and complete records" is alone reason to invoke 19 U.S.C. § 1677e(b). Commerce did not do so, because it did not "feel it is appropriate" to make an adverse inference because "both companies were able to submit payment documentation and other official business documentation." Appx0007123. However, this explanation is not consistent with the record. The mere fact that a self-selected group of payment figures ties to a figure provided in response to the questionnaire does not establish that the total payments equaled the original purchase price. Nor does the fact that the payment slips are "business documentation" establish whether those payments included interest, or taxes, or other charges, or were made to the seller of the land-use rights. These issue are precisely the reason to insist on a contract, company record, or GOC document showing the purchase price and terms of sale.

Judged against the record, Commerce's assertion elsewhere that "there is no evidence on the record that undermines {the} probative value" of the payment receipts is wrong. Appx0007122. The payment slips do not have any probative value with respect to the actual purchases prices. The fact that the payments extended over a considerable period of time and were made pursuant to [          ] contracts is not consistent with the claim that the sum of those payments equals the original price. Nor is the evidence on its face reliable with respect to the amount actually paid, the terms of payment, or even the Payees. It follows that "it is not reasonable for the court to affirm a determination…when there is no data tending to confirm a central part of {the} analysis." *Elkem Metals Co. v. United States*, 441 F. Supp. 2d 1292, 1301 (Ct. Int'l Trade 2006).

In fact, Commerce agreed that the payment slips were not probative on their own. As noted above, Commerce conceded that the payment slips are "not a substitute for the land-use rights contracts themselves." Appx0007122. Indeed,

> because the record lacks the land-use rights contracts which *are required to confirm the price paid for the land parcels*, {Commerce} intend{ed} to continue to examine this program in the ongoing review of the order and expect{ed} the respondents to be able to provide the requisite land-use rights purchase contracts to permit Commerce to undertake a complete analysis of a land for LTAR program.

Appx0007123. If the land-use rights contracts are necessary for a complete analysis in the next administrative review they are equally necessary in the instant review. Commerce's cannot ignore the respondents' failure to maintain adequate records consistent with the duty to cooperate imposed by 19 U.S.C. § 1677e(b).

Stated differently, there is no "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Commerce's decision to use the prices provided by Heze Huayi and Kangtai, despite the absence of any basis for those figures in company or other records, "runs counter to the evidence before the agency." *Alabama Aircraft Industries, Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs*, 463 U.S. at 43 (1983)). For these reasons, Commerce's reliance on the purchase price figures alleged by Heze Huayi and Kantai was not supported by substantial evidence, and its refusal to make an adverse inference pursuant to 19 U.S.C. § 1677e(b) was contrary to law.

## CONCLUSION

For the reasons discussed above, this Court should find Commerce's *Final Results* are not in accordance with law and are unsupported by substantial evidence and should, therefore,

remand this matter to Commerce with instruction to find that (1) Heze Huayi and Kangtai failed to cooperated to the best of their ability, and (2) to apply an adverse inference in selecting the facts otherwise available when calculating a subsidy benefit under the provision of land-use rights for LTAR program.

Respectfully submitted,

/s/ James R. Cannon, Jr.
James R. Cannon, Jr.
Chase J. Dunn

CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave, N.W., Suite 300
Washington, D.C. 20037
(202) 567-2300

*Counsel to Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation*

Date:   December 17, 2024

Court. No. 24-00118

## <u>Certificate of Compliance</u>

The undersigned hereby certifies that the forgoing submission of "Memorandum of Law and Fact in Support of Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record" filed by Plaintiffs on December 17, 2024, contains 7,000, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the maximum 14,000 word limitation set forth in the Standard Chambers Procedures.

BY: /s/ James R. Cannon Jr.