IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

| | | |
|---|---|---|
| BIO-LAB, INC., *et al.*, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Court No. 24-00118 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JUANCHENG KANGTAI CHEMICAL CO., | ) | |
| LTD., HEZE HUAYI CHEMICAL CO., LTD., | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |

---

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

---

BRETT A. SHUMATE
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:
ASHLANDE GELIN
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
  Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230

KARA M. WESTERCAMP
Senior Trial Counsel
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 305-7571
Email: kara.m.westercamp@usdoj.gov

February 21, 2025

*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

STATEMENT PURSUANT TO RULE 56.2 ................................................................2

    I.    Administrative Decision Under Review ...........................................2

    II.    Issue Presented ................................................................................2

STATEMENT OF FACTS ..................................................................................2

    I.    Initiation Of Review .......................................................................2

    II.    Bio-Lab's New Subsidy Allegation ................................................3

    III.    The Preliminary Results .................................................................4

    IV.    Respondents' Inability To "Currently" Locate The Land-Use Contracts ................6

    V.    The Final Results ............................................................................7

SUMMARY OF THE ARGUMENT ....................................................................9

ARGUMENT ......................................................................................................10

    I.    Standard Of Review .......................................................................10

    II.    Legal Framework For Facts Available With An Adverse Inference ................10

    III.    Substantial Evidence Supports Commerce's Determination Not To Apply An Adverse Inference To The Facts Otherwise Available ................11

    IV.    Plaintiffs' Arguments Are Meritless ................13

        A.    Plaintiffs' Argument Is Not Persuasive That Respondents Failed To Act To The Best Of Their Ability ................14

        B.    Plaintiffs' Argument That Respondents' Payment Slips Were Self-Selective Is Speculative And Does Not Warrant An Adverse Inference ................19

CONCLUSION ...................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Altx, Inc. v. United States*,
   370 F.3d 1108 (Fed. Cir. 2004) ........................................................................ 10

*Appvion, Inc. v. United States*,
   100 F. Supp. 3d 1374 (Ct. Int'l Trade 2015) ..................................................... 12

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) .......................................................................................... 10

*Deosen Biochemical Ltd. v. United States*,
   301 F. Supp. 3d 1372 (Ct. Int'l Trade 2018) ..................................................... 17

*Fujitsu Gen. Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) .......................................................................... 10

*Hitachi Metals, Ltd. v. United States*,
   949 F.3d 710 (Fed. Cir. 2020) .......................................................................... 10

*Hyundai Electric & Energy Systems Co., Ltd. v. United States*,
   15 F.4th 1078 (Fed. Cir. 2021) ......................................................................... 24

*Hyundai Electric & Energy Systems Co., Ltd. v. United States*,
   578 F. Supp. 3d 1245 (Ct. Int'l Trade 2022) ..................................................... 17

*Inland Steel Indus., Inc. v. United States*,
   967 F. Supp. 1338 (Ct. Int'l Trade 1997), *aff'd* 188 F. 3d 1349 (Fed. Cir. 1999) .................... 18

*Intell. Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017) ....................................................................... 20

*Maverick Tube Corp. v. United States*,
   857 F.3d 1353 (Fed. Cir. 2017) ....................................................................... 24

*Nippon Steel Corp. v. United States*,
   337 F.3d 1373 (Fed. Cir. 2003) .............................................................*passim*

*Nippon Steel Corp. v. United States*,
   458 F.3d 1345 (Fed. Cir. 2006) ....................................................................... 10

*OSI Pharms., LLC v. Apotex Inc*.,
   939 F.3d 1375 (Fed. Cir. 2019) ....................................................................... 20

*OTR Wheel Eng'g, Inc. v. United States,*
    901 F. Supp. 2d 1375 (Ct. Int'l Trade 2013) ............................................................ 22

*PAM, S.p.A. v. United States,*
    582 F.3d 1336 (Fed. Cir. 2009) ................................................................................ 10

*Pokarna Engineered Stone Ltd. v. United States,*
    547 F. Supp. 3d 1300 (Ct. Int'l Trade 2021), *aff'd,* 56 F.4th 1345 (Fed. Cir. 2023) ............... 15

*Pro-Team Coil Nail Enter., Inc. v. United States,*
    419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ............................................................ 14

*QVD Food Co., Ltd. v. United States,*
    658 F.3d 1318 (Fed. Cir. 2011) ................................................................................ 21

*Sidenor Industries SL v. United States,*
    664 F. Supp. 2d  (Ct. Int'l Trade 2009) ................................................................... 17

*Tung Mung Dev. Co. v. United States,*
    25 C.I.T. 752 (2001) ................................................................................................. 11

*United States v. Eurodif S.A.,*
    555 U.S. 305 (2009) ................................................................................................. 10

*Vandewater Int'l Inc. v. United States,*
    589 F. Supp. 3d 1324 (Ct. Int'l Trade 2022) ............................................................ 14

**Statutes**

19 U.S.C. § 1516a(b) ........................................................................................................ 10

19 U.S.C. § 1677(5)(D) ...................................................................................................... 5

19 U.S.C. § 1677(5A) ........................................................................................................ 5

19 U.S.C. § 1677e(a) .................................................................................................. 5, 7, 11

19 U.S.C. § 1677e(b) ................................................................................................ 5, 11, 12

19 U.S.C. § 1677m(d) ...................................................................................................... 11

**Rules**

U.S. Ct. Int'l Trade R. 56.2 ................................................................................................. 1

**Regulations**

19 C.F.R. § 351.511(a) .......................................................................................................... 5

19 C.F.R. § 351.524(c) .......................................................................................................... 5

19 C.F.R. § 351.524(d) .......................................................................................................... 6

**Administrative Determinations**

*Chlorinated Isocyanurates from the People's Republic of China: Countervailing Duty Order*,
    79 Fed. Reg. 67,424 (Dep't of Commerce Nov. 13, 2014) ....................................................... 18

*Chlorinated Isocyanurates from the People's Republic of China: Final Results of Countervailing
    Duty Administrative Review*; *2021*,
    89 Fed. Reg. 49,149 (Dep't of Commerce June 11, 2024) ................................................. *passim*

*Glycine from India*,
    88 Fed. Reg. 77,552 (Dep't of Commerce Nov. 13, 2023) ................................................. 16, 17

*Hand Trucks from China*,
    73 Fed. Reg. 43,684 (Dep't of Commerce July 28, 2008) ................................................. 16, 17

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
    88 Fed. Reg. 50 (Dep't of Commerce Jan. 3, 2023) ................................................................... 2

*Stainless Steel Bar from the United Kingdom*,
    67 Fed. Reg. 3,146 (Dep't of Commerce Jan. 23, 2002) ................................................. 15, 16

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

_____

|  |  |  |
|---|---|---|
| BIO-LAB, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Court No. 24-00118 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JUANCHENG KANGTAI CHEMICAL CO., | ) | |
| LTD., HEZE HUAYI CHEMICAL CO., LTD., | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

_____

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiffs Bio-Lab, Inc., Innovative Water Care LLC, Occidental Chemical Corporation (collectively, plaintiffs or Bio-Lab) challenging various aspects of the Department of Commerce's (Commerce) final results in the 2021 administrative review of the countervailing duty order covering chlorinated isoscyanurates from the People's Republic of China (China). As explained below, plaintiffs' motion should be denied because Commerce's determination is supported by substantial evidence and is otherwise in accordance with law.

**STATEMENT PURSUANT TO RULE 56.2**

I.    Administrative Decision Under Review

The administrative determination under review is *Chlorinated Isocyanurates from the People's Republic of China: Final Results of Countervailing Duty Administrative Review*; *2021*, 89 Fed. Reg. 49,149 (Dep't of Commerce June 11, 2024) (final results), Appx0007136-0007137, and accompanying Issues and Decision Memorandum (Dep't of Commerce June 4, 2024) (IDM), Appx0007110-0007126.  The period of review is January 1, 2021, through December 31, 2021.

II.    Issue Presented

Whether substantial evidence supports Commerce's determination not to apply facts available with an adverse inference to the Provision of Land-Use Rights for Less Than Adequate Remuneration (LTAR) for the chemical industry program.

**STATEMENT OF FACTS**

I.    Initiation Of Review

On January 3, 2023, Commerce initiated the 2021 administrative review of the countervailing duty order covering chlorinated isoscyanurates from the People's Republic of China.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 50 (Dep't of Commerce Jan. 3, 2023), Appx0001007-0001013.  On February 24, 2023, Commerce selected Heze Huayi Chemical Co. Ltd. (Heze Huayi) and Juancheng Kangtai Chemical Co., Ltd (Kangtai) as mandatory respondents.  Respondent Selection Memorandum, Appx0001032-0001037.  On March 1, 2023, Commerce issued an initial questionnaire to the Government of China and instructed it to forward the questionnaire to the two mandatory respondents.  Countervailing Duty Questionnaire, Appx0001038-0001116.

II.    Bio-Lab's New Subsidy Allegation

On May 11, 2023, Bio-Lab filed a new subsidy allegation based on the information

contained in a questionnaire response from Kangtai.  *See* New Subsidy Allegation,

Appx0001540-0001783; *see also* Kangtai Section III Questionnaire Resp., Appx0001424-

0001539, Appx0080474-0080684.  In the new subsidy allegation, Bio-Lab claimed that the

provision of land-use rights for LTAR for the chemical industry allowed Kangtai, a chemical

producer, to receive a land grant or land for LTAR from the Chinese government to relocate its

production plant and build new facilities.  *See* New Subsidy Allegation at 3, Appx0001542.

On November 2, 2023, Commerce initiated an investigation into the alleged subsidy and

issued questionnaires to the Chinese government, Heze Huayi, and Kangtai.  *See* New Subsidy

Allegation Initiation, Appx0006639-0006642; Chinese Government New Subsidy Allegation

Questionnaire (NSAQ), Appx0006643-0006646; Heze Huayi's NSAQ, Appx0006647-0006651;

Kangtai's NSAQ, Appx0006652-0006656.

First, Commerce requested that the Chinese government provide all government laws or

regulations pertaining to the provision of land-use rights in effect during the period of review,

and to "{i}ndicate whether the provision of land or land-use rights was contingent upon the

firm's status (e.g., state-owned enterprise, located in a particular geographical area, etc.) or

activity (e.g., export sales, purchases from domestic suppliers, etc.)."  Chinese Government

NSAQ at 4, Appx0006646.  Second, Commerce requested that the mandatory respondents

submit the following information for each instance in which they acquired or leased land-use

rights:  (1) date of acquisition, (2) identity of seller, (3) location of land, (4) area of land, (5)

price paid for land-use rights, (6) terms of payment, (7) duration of lease, (8) translated copy of

the land-use contract, and (9) land-use certificates and land-use agreements issued by the local

land-use bureau.  Heze Huayi NSAQ at 4-5, Appx0006650-0006651; Kangtai NSAQ at 4-5, Appx0006655-0006656.

On November 14, 2023, Commerce received timely questionnaire responses from Heze Huayi and from Kangtai.  *See* Heze Huayi NSAQ Resp., Appx0006682-0006695, Appx0085016-0085047; Kangtai NSAQ Resp., Appx0006696-0006709, Appx0085048-0085065.  The Chinese government, however, failed to provide a response.  On the other hand, Heze Huayi and Kangtai provided all information that Commerce had requested in its questionnaires, with the exception of the land-use contracts themselves.  For example, Heze Huayi explained that "{s}ince it has been years since the land-use right purchases, Heze Huayi currently cannot locate the land-use right purchase contracts per this request."  Heze Huayi NSAQ Resp. at 8, Appx0006689, Appx0085023.  Heze Huayi did provide a copy of the land-use right certificates.  *Id.*  Similarly, Kangtai stated that "{s}ince it has been several years since its land-use right purchase, Kangtai currently cannot locate the land-use right purchase contracts," and also provided a copy of the land-use right certificates.  Kangtai NSAQ Resp. at 8, Appx0006703, Appx0085055.

III.    The Preliminary Results

On November 30, 2023, Commerce issued its preliminary results.  *See* Preliminary Decision Memorandum (PDM), Appx0006776-0006805.  Commerce preliminarily determined that Heze Huayi and Kangtai received countervailable subsidies during the period of review with respect to the provision of land-use rights for LTAR for the chemical industry.  *Id.* at 15-16, Appx0006790-0006791.  Both respondents reported gaining rights to certain property during the average useful life period; however, the Chinese government withheld necessary information to determine financial contribution and specificity of the program.  *Id*.  Specifically, Commerce determined that the Chinese government failed to provide local laws or regulations governing

land-use rights for LTAR for the chemical industry, nor did it provide any explanation of how respondents acquired land-use rights. *Id*. at 15, Appx0006790. Therefore, because the Chinese government withheld information that Commerce had requested, Commerce relied on facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(2) to replace the missing necessary information. *Id*. at 16, Appx0006791.

Furthermore, because the circumstances under which respondents obtained land-use rights were provided and verified in previous China countervailing duty proceedings, Commerce determined that the record evidence demonstrated that the Chinese government refused to provide information that was available to it. *Id*. Accordingly, Commerce preliminarily determined that the Chinese government failed to cooperate by not acting to the best of its ability to comply with Commerce's request for information and applied an adverse inference when selecting from among the facts otherwise available, pursuant to 19 U.S.C. § 1677e(b). *Id*. In drawing an adverse inference, Commerce preliminarily determined that the Chinese government's provision of land-use rights for LTAR for the chemical industry constitutes a financial contribution, within the meaning of 19 U.S.C. § 1677(5)(D), and is specific, within the meaning of 19 U.S.C. § 1677(5A). *Id*.

To calculate the net benefit Heze Huayi and Kangtai received, consistent with its practice, Commerce constructed a tier-three benchmark using land-use prices outside of China under 19 C.F.R. § 351.511(a)(2)(iii). *Id*. at 22-23, Appx0006797-0006798. Commerce then multiplied the benchmark by the total area of land that the mandatory respondents reported receiving during the relevant timeframe and subtracted the price paid for each tract to derive the total unallocated benefit. *Id*. at 25-26, Appx0006800-0006801. Commerce treated the benefit as a non-recurring subsidy, pursuant to 19 C.F.R. § 351.524(c)(2)(iii), and allocated the amount across the terms of

the land-use agreements to determine the amount attributable to the period of review, pursuant to 19 C.F.R. § 351.524(d).  *Id*. at 25, Appx0006800.  Commerce then divided the benefit amount calculated for each respondent by the appropriate sales denominator and preliminarily determined a countervailable subsidy rate of 2.55 percent *ad valorem* for Heze Huayi and 2.33 percent *ad valorem* for Kangtai.  *Id*. at 26, Appx0006801.

IV.    Respondents' Inability To "Currently" Locate The Land-Use Contracts

    After a teleconference with Bio-Lab, Commerce re-evaluated the respondents' initial new subsidy allegation questionnaire responses.  *See* Teleconference with Bio-Lab, Appx0006955.  In April 2024, Commerce issued supplemental questionnaires to the mandatory respondents reiterating the necessity of the land-use rights contracts for Commerce's determination but also provided a list of requested information in the *absence of these land-use rights contracts*.[1]  Heze Huayi Supp. Questionnaire, Appx0006958-0006962, Appx0085218-00085222; Kangtai Supp. Questionnaire, Appx0006963-0006968, Appx0085223-0085228.  If the respondents were still unable to locate the contracts by the deadline, Commerce specified that they must explain the steps taken to determine the price paid for land-use rights and provide specific documentation to substantiate each land-use rights purchase within their accounting system.  Heze Huayi Supp. Questionnaire at 5, Appx0085222; Kangtai Supp. Questionnaire at 5-6, Appx0085227-0085228.

    In accordance with Commerce's instructions, Heze Huayi and Kangtai timely filed their responses, explaining that the total amount paid for the land-use rights were determined based on payment slips.  *See* Heze Huayi Supp. Questionnaire Resp. (SQR), Appx0006977-0007030, Appx0085229-0085320; Kangtai SQR, Appx0007034-0007063, Appx0085321-0085371.  The

---

[1] The land-use rights contracts serve as third-party documentation demonstrating that the reported amounts are the contracted values of the land-use rights purchases.  *See* IDM at 13, Appx0007122.

6

respondents also submitted documentation corroborating their payment slips with their accounting systems and audited financial statements, as requested. *Id*.

V.    <u>The Final Results</u>

On June 11, 2024, Commerce published its final results. *See* Final Results, 89 Fed. Reg. 49,149. Commerce made certain changes regarding the land parcels included in Heze Huayi's benefit calculation for the provision of land-use rights for LTAR for the chemical industry program. IDM at 6, Appx0007115. As a result, Commerce determined a revised countervailable subsidy rate of 1.69 percent *ad valorem* for Heze Huayi. *Id*. Kangtai's subsidy rate for this program remained unchanged from the preliminary results, *i.e.*, 2.33 percent *ad valorem*. *Id*.

In the absence of the requested land-use rights contracts, Commerce relied on facts otherwise available to calculate the benefit conferred under the provision of land-use rights for LTAR for the chemical industry program because the record was still devoid of necessary information, including third-party documentation demonstrating that the reported amounts are the contracted values of the land-use rights purchases. *Id.* at 11, 13, Appx0007120, Appx0007122; *see also* 19 U.S.C. § 1677e(a)(1). Commerce explained the importance of the missing contracts because, "{s}pecifically, the land-use rights purchase contracts normally provide information regarding the owner of the land, the terms and duration of the contract, the location, the type of land-use right, the area, and, crucially, the price." IDM at 13, Appx0007122.

However, Commerce acknowledged that Heze Huayi and Kangtai signed the contracts at issue more than a decade ago, and that they were unable to "currently locate" them within the timeframe specified in Commerce's questionnaires. *Id*. Instead, the respondents submitted payment source documentation (*i.e.*, payment slips), generated in the ordinary course of business

and tied this information to their accounting system and audited financial statements, as requested in Commerce's supplemental questionnaire. *Id*. Commerce explained that "{w}hile this information is not a substitute for the land-use rights contracts themselves, there is no evidence on the record that undermines its probative value." *Id*. Therefore, Commerce determined not to apply an adverse inference for the final results. *Id*.

Before Commerce, Bio-Lab argued that the payment slips that the respondents had submitted warranted an adverse inference. *Id*. at 14-15, Appx0007123-0007124. According to Bio-Lab, the payment slips were unreliable based on purported irregularities in the timing and payment amounts, further claiming that these payments may have been used for other reasons. *Id*. Bio-Lab also alleged that the respondents were on notice since the original investigation in 2013 and had failed to identify this program or the prices paid for the land-use rights in any prior segment of this proceeding. *Id*. at 15, Appx0007124. Commerce disagreed and explained why an adverse inference was not warranted.

For example, Commerce explained that the discrepancy in the payment slips alleged by petitioners were based on "speculation" and unsupported by evidence. *Id*. To wit, "because these payments tie to the accounting system and financial statements of Heze Huayi and Kangtai," Commerce determined "that as facts available, they provide adequate support for the price paid for the land-use rights." *Id.*

Also, Commerce found Bio-Lab's concern that the respondents were on notice misplaced, given that Bio-Lab alleged the existence of this program for the first time as a new subsidy allegation in *this* review. *Id*. As a result, Commerce explained that it expects the respondents to provide the requisite land-use rights contracts in the subsequent review to permit Commerce to

undertake a complete analysis of the price paid.[2] *Id.*

## SUMMARY OF THE ARGUMENT

Substantial evidence supports Commerce's determination to apply facts otherwise available, and to *not* apply an adverse inference. Commerce accepted Heze Huayi's and Kangtai's explanations that they were not able to "currently locate" the land-use rights contracts but were able to provide payment information (*e.g.*, land-use certificates) to report the total amount paid for their land-use rights purchases. As requested, the respondents also timely provided payment slips that were reconciled with their accounting system and audited financial statements; further demonstrating how the respondents calculated their reported prices for land-use rights.

The Court should reject Bio-Lab's unsupported argument that the respondents failed to cooperate to the best of their ability by failing to provide their land-use rights contracts and that the payment slips should be found unreliable based on the speculation that these payments "*may*" have been made for other reasons. Indeed, Bio-Lab has failed to cite record evidence that undermines the respondents' reported information to support Bio-Lab's assertion that the information is unreliable. Considering the respondents' consistent, timely, and responsive reporting of their land-use rights payment information, substantial evidence supports Commerce's determination that the use of adverse facts available is not warranted.

---

[2] The plaintiffs state "that, to date, neither Heze Huayi nor Kangtai have submitted their land-use contracts in the 2022 administrative review of the Chlorinated Isos antidumping order." Bio-Lab Br. at 10 n.2. The plaintiffs suggest that this Court should take judicial notice but do not reference any evidence or finding to support this assertion.

**ARGUMENT**

I.    Standard Of Review

In reviewing Commerce's antidumping and countervailing duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)). "The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009). Even if the Court may draw two inconsistent conclusions from the record evidence, that possibility "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Under this standard, a reviewing court "must affirm {Commerce's} determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from {Commerce's} conclusion." *Hitachi Metals, Ltd. v. United States*, 949 F.3d 710, 716 (Fed. Cir. 2020) (quoting *Altx, Inc. v. United States*, 370 F.3d 1108, 1121 (Fed. Cir. 2004)). Thus, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted).

II.    Legal Framework For Facts Available With An Adverse Inference

Commerce shall use facts otherwise available to reach its final determination when "necessary information is not available on the record," a party "withholds information that has

been requested," fails to provide the information timely or in the manner requested, "significantly impedes a proceeding," or provides information Commerce is unable to verify. 19 U.S.C. § 1677e(a)(1)-(2). When Commerce's request is clear and relates to issues in an investigation, a respondent has a "statutory obligation to prepare an accurate and complete record in response to questions plainly asked by Commerce." *Tung Mung Dev. Co. v. United States*, 25 C.I.T. 752, 758 (2001). "The mere failure of a respondent to furnish requested information—for any reason—requires Commerce to resort to other sources of information to complete the factual record on which it makes its determination." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003). However, prior to resorting to facts otherwise available, Commerce must inform and provide, when practicable, the noncomplying party with an opportunity to comply. 19 U.S.C. § 1677m(d).

Further, if Commerce finds that "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," then Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b). When determining whether a respondent has complied to the "best of its ability," Commerce "assess{es} whether {a} respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel*, 337 F.3d at 1382. Adverse inferences are not warranted "merely from a failure to respond," but rather in instances when Commerce reasonably expected that "more forthcoming responses should have been made." *Id*. at 1383.

III. Substantial Evidence Supports Commerce's Determination Not To Apply An Adverse Inference To The Facts Otherwise Available

Substantial evidence supports Commerce's determination to apply facts otherwise available pursuant to 19 U.S.C. § 1677e(a) because necessary information was missing from the

11

record, namely, the respondents' land-use purchase contracts. *See* IDM at 11-16, Appx0007120-0007125. Commerce determined, however, that an adverse inference was not warranted and that determination is reasonable. *Id.* at 14-15, Appx0007123-0007124; *see also* 19 U.S.C. § 1677e(b).

The statute provides that Commerce *may* apply an adverse inference in selecting among the facts otherwise available if it finds an interested party fails to cooperate to the best of its ability. 19 U.S.C. § 1677e(b). An interested party fails to cooperate to "the best of its ability" when "it fails to put forth its maximum effort to provide Commerce with full and complete answers to all inquiries." *Nippon Steel Corp.*, 337 F.3d at 1382. "Commerce enjoys broad discretion when considering whether to apply {facts available with an adverse inference}," and it reasonably exercised that discretion in this case. *Appvion, Inc. v. United States*, 100 F. Supp. 3d 1374, 1382 (Ct. Int'l Trade 2015).

The underlying review involved two respondents who could not *currently* locate land-use rights contracts obtained more than a decade ago based on the deadlines that Commerce had provided. IDM at 13, Appx0007122. Heze Huayi and Kangtai did not ignore Commerce's request to provide land-use rights contracts, nor did they assert that the contracts were no longer in existence; rather they timely informed Commerce that they could not *currently* locate the contracts. *See* Heze Huayi's Questionnaire Resp. at 2, Appx0006982; Kangtai's Questionnaire Resp. at 1-2, Appx0007040-0007041. In doing so, Heze Huayi and Kangtai provided other necessary information on their land-use rights, including land-use certificates. *Id*. After Commerce requested further purchase documentation, both respondents provided proof of payment (*i.e.*, payment slips) and reconciled those land-use rights purchase payments to their

audited financial statements.  *See* Kangtai SQR at Exhibits SQ4-1, SQ4-2, Appx0085331-0085359; Heze Huayi SQR at SQ3-2, SQ3-3, and SQ3-4, Appx0085264-0085316.

In this instance, Commerce reasonably determined that the respondents cooperated to the best of their ability, providing reconcilable documentation to support the actual prices paid for land-use rights in this period of review.  IDM at 11, 15, Appx0007120, Appx0007124.  It is undisputed that the record is missing necessary information; Commerce acknowledged this fact when it issued a supplemental questionnaire, further reiterating the necessity of evidence of the land-use rights contracts.  *Id*. at 13, Appx0007122.  However, Commerce provided the respondents with an alternative reporting possibility in the absence of the land-use rights contracts, by requesting payment source documentation to support the respondents' reported land-use rights payments.  *See* Heze Huayi Supp. Questionnaire at 5, Appx0085222; Kangtai Supp. Questionnaire at 5-6, Appx0085227-0085228.  Both Heze Huayi and Kangtai timely complied.  *See* Kangtai SQR at Exhibits SQ4-1, SQ4-2, Appx0085331-0085359; Heze Huayi SQR at SQ3-2, SQ3-3, and SQ3-4, Appx0085264-0085316.

Therefore, Commerce relied on this information, as facts otherwise available, to calculate Heze Huayi and Kangtai's net benefit under the provision of land-use rights for LTAR for the chemical industry program.  IDM at 6, Appx0007115.  Commerce also explained that, although under these circumstances it determined that Heze Huayi and Kangtai had cooperated to the best of their ability, they are expected to submit the land-use rights contracts in the subsequent administrative review.  *Id*. at 13, Appx0007122.

IV.    Plaintiffs' Arguments Are Meritless

Generally, plaintiffs attempt to inject their own subjective views on what satisfies the statute's standard that a respondent must respond to the "best of its ability."  *See generally* Bio-

Lab Br.  However, the plaintiffs fail to cite any authority that would require Commerce to depart

from its reasoning in the final results, nor have they demonstrated that Commerce acted

arbitrarily in rendering its determination.  *See id.*

Plaintiffs also argue that the respondents failed to cooperate to the best of their ability in

responding to Commerce's requests for information based on alleged irregularities related to the

payment source documentation submitted and the respondents' explanation that they were

currently unable to locate their land-use rights contracts.  *See generally id.*  The plaintiffs further

argue that the latter was inexcusable because, according to plaintiffs, the original investigation

from 2013 provided sufficient notice that these contracts could *potentially* be investigated

approximately a decade later.  *Id*. at 16-17.

As we explain below, these arguments are meritless, and Commerce reasonably

determined that an adverse inference was not warranted.

A.    Plaintiffs' Argument Is Not Persuasive That Respondents Failed To Act To The
      Best Of Their Ability

Although "inattentiveness" or "carelessness" merits a finding that a respondent has failed

to cooperate, the statute "does not require perfection and recognizes that mistakes sometimes

occur."  *Pro-Team Coil Nail Enter., Inc. v. United States*, 419 F. Supp. 3d 1319, 1333 (Ct. Int'l

Trade 2019) (quoting *Nippon Steel*, 337 F.3d at 1382).  The respondents could not locate their

land-use rights contracts within the timeframe stipulated in Commerce's questionnaires, but they

notified Commerce of this difficulty and provided all other source documentation requested–

including actual payment documentation for their land-use rights purchases.  *See* IDM at 11-16,

Appx0007120-0007125.  Commerce was satisfied with the responses provided, and the

plaintiffs' preference for a different outcome does not render Commerce's determination

unreasonable.  *See Vandewater Int'l Inc. v. United States*, 589 F. Supp. 3d 1324, 1337 (Ct. Int'l

14

Trade 2022) ("{F}or Plaintiffs to establish that Commerce's analysis {} was unreasonable, they must demonstrate that their preferred outcome was the 'one and only reasonable' conclusion Commerce could reach in light of the record."); *see also Pokarna Engineered Stone Ltd. v. United States*, 547 F. Supp. 3d 1300, 1308 (Ct. Int'l Trade 2021), *aff'd*, 56 F.4th 1345 (Fed. Cir. 2023) ("A party's ability to point to an alternative, reasonable finding on the agency record does not provide a basis for the court to set aside an agency's determination.").

Nonetheless, the plaintiffs cite three administrative proceedings—*Stainless Steel Bar from the United Kingdom*, *Hand Trucks from China*, and *Glycine from India*—for the proposition that Heze Huayi and Kangtai's "inability to provide documents generated in the normal course of business, including contracts, demonstrates inadequate record keeping, warranting a determination that the respondent did not act to the best of its ability." Bio-Lab Br. at 14-15. As an initial matter, as we explain below, the cited administrative proceedings are inapposite because the proceedings all involve respondents who consistently submitted inadequate information, persisted in a pattern of unresponsive and evasive responses, or either failed to notify Commerce of any difficulties in providing requested information or simply failed to provide information responsive to Commerce's questionnaires. Such facts are not present in this case, where the respondents were generally responsive, and thus are not dispositive of the plaintiffs' argument.

For example, in *Stainless Steel Bar from the United Kingdom*, the respondent claimed that certain costs of sales data were lost entirely, which other record evidence contradicted. *Stainless Steel Bar from the United Kingdom*, 67 Fed. Reg. 3,146 (Dep't of Commerce Jan. 23, 2002) (final LTFV determ.), and accompanying IDM at Comment 1 ("{I}nstead of putting forth effort in trying to work with the records they did have, respondent chose to do nothing.").

15

Commerce also determined that the respondent "failed to address the questions fully and adequately, instead avoiding issues of direct proof and simply repeating that it has 'cooperated to the best of its ability.'" *Id.* Likewise, in *Hand Trucks from China*, the respondent was unable to substantiate the authenticity of two documents that it had submitted in its questionnaire response. *See Hand Trucks from China*, 73 Fed. Reg. 43,684 (Dep't of Commerce July 28, 2008) (final results), and accompanying IDM. Commerce stated that the "{respondent} never informed {Commerce} that it was in any way unable to submit the information that {Commerce} requested in its questionnaires or that it needed assistance." *Id.* Unlike the respondents in these administrative proceedings, Heze Huayi and Kangtai not only informed Commerce that they could not *currently* locate the land-use rights contracts, but they timely responded with responsive information to assist with the investigation of the newly alleged subsidy after Commerce gave them the opportunity to submit alternative information. *See* IDM at 12-13, Appx0007121-0007122. Plaintiffs continue to ignore this fact.

The plaintiffs' reliance on *Glycine from India* is also unpersuasive. In that case, Commerce applied facts available with an adverse inference because the respondent "failed to provide responsive information," relying on a previous review when Commerce also applied an adverse inference for the same reasons. *Glycine from India*, 88 Fed. Reg. 77,552 (Dep't of Commerce Nov. 13, 2023) (final results), and accompanying IDM at Comment 2 ("In spite of {Commerce's} third attempt, Kumar, again, failed to comply with Commerce's request, continued to deny its affiliation with Companies A and B, and failed to provide supporting documents to substantiate its denial, despite our explicit request to do so."). In contrast, both Heze Huayi and Kangtai timely submitted complete responses to Commerce's questionnaires and provided additional information (*i.e.*, payment slips) that were reconciled with their accounting

16

system and audited financial statements to support their reported land-use rights payments.  IDM at 13-16, Appx0007122-0007125.  Although this information was not a substitute for the land-use rights contracts, Commerce determined no evidence on the record undermined the information's probative value.  *See id*. at 13, Appx0007122; *cf. Hand Trucks from China* IDM at Comment 1 ("Taifa fails to meet the Nippon Steel standard by its inability to produce <u>*any source document* </u>to support the accuracy of the 2003 Share Transfer Agreement.") (emphasis added).

Moreover, the cases that plaintiffs cite are also readily distinguishable.  *See* Bio-Lab Br. at 15.  For example, in *Hyundai Electric & Energy Systems Co., Ltd. v. United States*, 578 F. Supp. 3d 1245, 1255 (Ct. Int'l Trade 2022), this Court held that "{t}he fundamental problem for {the plaintiff} is that it sought to maintain inconsistent factual and reporting positions and to place the burden on Commerce to resolve those inconsistencies."  Likewise, in *Deosen Biochemical Ltd. v. United States*, 301 F. Supp. 3d 1372, 1379 (Ct. Int'l Trade 2018), the Court held that "Commerce asked for sales agreements four times across two administrative reviews; each time, Plaintiffs withheld key responsive documents."  And in *Sidenor Industries SL v. United States*, 664 F. Supp. 2d 1357 (Ct. Int'l Trade 2009), the Court held that Sidenor did not provide Commerce the information necessary "to gain an understanding of Sidenor's reporting methodology."  The plaintiffs fail to show how any of the actions (or inactions) performed by the respondents in those cases were at all similar to Heze Huayi's and Kangtai's consistent, timely, and responsive reporting of their land-use rights payment information.  *See* IDM at 11-16, Appx0007120-0007125.

Finally, the plaintiffs claim that "Heze Huayi and Kangtai were on notice in 2013" and thus were expected to provide their land-use rights contracts in time for Commerce's investigation of the newly alleged subsidy program in the 2021 administrative review.  Bio-Lab

17

Br. at 16-17.  The plaintiffs base this "2013 notice" on the date the petition was filed for the underlying countervailing duty order.  *See Chlorinated Isocyanurates from the People's Republic of China: Countervailing Duty Order*, 79 Fed. Reg. 67,424 (Dep't of Commerce Nov. 13, 2014).  However, the plaintiffs cite no authority to support their claim that the 2013 petition, which *did not identify* the land-use rights for LTAR for the chemical industry program, is relevant in the context of this review.  *See* Bio-Lab Br. at 16-17.

Indeed, in the final results, Commerce explained that Bio-Lab alleged the existence of this program *for the first time* as a new subsidy allegation in this administrative review, and that Commerce initiated an investigation of the program as a result of this new allegation.  IDM at 15, Appx0007124.  Consistent with its practice, Commerce evaluated the record of this administrative review on its own but also cautioned the respondents that it "intend{s} to follow this matter in the next review and confirm the record evidence with the {Chinese government} and through the land-use rights contracts."  IDM at 15, Appx0007124; *see also Inland Steel Indus., Inc. v. United States*, 967 F. Supp. 1338, 1361 (Ct. Int'l Trade 1997), *affirmed* 188 F. 3d 1349 (Fed. Cir. 1999) (recognizing that "Commerce's findings in a particular case must be based solely on the facts in the administrative record of that case, regardless of the findings made in an earlier case.").

Moreover, the alleged "2013 notice" is undermined by the fact that Bio-Lab requested that Commerce investigate the provision of land-use rights for LTAR because the need to investigate this program did not become apparent until recent events occurred, *e.g.*, the 14th Five-Year Plan and Kangtai's purchase of land in a new province.  *See* New Subsidy Allegation Memorandum at 2, Appx0006640 ("{T}he need to investigate the provision of land in Shandong province only became apparent when Kangtai purchased land in Shandong in 2020"); IDM at 15,

18

Appx0000007124.  Therefore, Commerce explained that this "notice" concern is misplaced and that the respondents made their best efforts to provide Commerce with the requested information generated in their ordinary course of business.  *See* IDM at 15, Appx0007124; New Subsidy Allegation at 2-3, Appx0006640-0006641.  Indeed, not only were Heze Huayi and Kangtai responsive to Commerce's questionnaires, but they were able to tie their reported information to their accounting system and audited financial statements in accordance with Commerce's instructions, as an alternative means to providing the requested land-use rights contracts.  IDM at 13, Appx0007122.

In sum, the plaintiffs fail to demonstrate that the respondents did not "act to the best of their ability" in responding to Commerce's questionnaires and simply ignore the context supporting Commerce's determination to not apply an adverse inference.  *See id.* at 11-16, Appx0007120-0007125.

B.    Plaintiffs' Argument That Respondents' Payment Slips Were Self-Selective Is Speculative And Does Not Warrant An Adverse Inference

The plaintiffs argue that the payment slips that the respondents provided were self-selective, are not itemized to indicate the potential for additional fees that might have overstated the original purchase price, contained questionable timing and payment amounts, and do not indicate that the payees were the actual sellers of the land-use rights purchases.  *See* Bio-Lab Br. at 17-22.  However, nothing on the record contradicts the respondents' reported payment information, and the plaintiffs' arguments regarding purported irregularities are grounded in speculation, as we explain below.

As an initial matter, it is undisputed Commerce acknowledged that the record lacked necessary information (*i.e.*, land-use contracts), and this was the basis for relying on facts otherwise available.  IDM at 12-13, Appx0007121-0007122.  "{L}and-use rights contracts

19

normally provide information regarding the owner of the land, the terms and duration of the contract, the location, the type of land-use right, the area, and, crucially, the price." *Id.* at 13, Appx0007122. Although the respondents "supported the reported payments with self-generated documentation from their accounting systems," the record lacks much of this information, "including any third-party documentation demonstrating that the reported amounts are the contracted values of the land purchases." *Id*. Thus, necessary information is missing from the record – this fact is not in contention, and the plaintiffs devoting several pages of arguments to explaining why this information is necessary does not undermine Commerce's determination to apply facts otherwise available. *See* Bio-Lab Br. at 17-22.

To the extent that the plaintiffs claim that the respondents intentionally self-selected the submitted payments slips, *id.* at 17, no evidence on the record supports this allegation, as Commerce explained in the final results. IDM at 14-15, Appx0007123-0007124. Similarly, no evidence indicates that the respondents substantially overstated the original purchase prices, provided timing and payment amounts that are inconsistent with their land-use contract, or included payment slips with payees other than the sellers of the land-use rights. *See* Bio-Lab Br. at 17-22. In other words, no evidence supports the plaintiffs' speculation that the respondents provided payment slips that may have been used for other reasons. IDM at 14-15, Appx0007123-0007124; *see also OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) ("'Mere speculation' is not substantial evidence." (quoting *Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017))). In the final results, Commerce determined that no record evidence undermines the respondents' contention that they fully reported their payments for the land-use rights in question, IDM at 13-15, Appx0007122-0007124, and the plaintiffs cite no record evidence to the contrary.

20

For example, in accordance with Commerce's instructions, both respondents provided documentation used to determine the price paid for the land-use rights in the absence of the purchase contracts and demonstrated how these payments tie to their 2021 audited financial statements.  IDM at 13, Appx0007122 (citing Kangtai SQR at Exhibits SQ4-1, SQ4-2, Appx0085331-0085359; Heze Huayi SQR at SQ3-2, SQ3-3, and SQ3-4, Appx0085264-0085316).  Furthermore, both companies indicated that they made these payments in installments, and they described how they recorded these installment payments in their accounting systems.  *See* Heze Huayi's SQR at 2, Appx0006983 ("Heze Huayi debited the intangible assets ledger when it made payments for land-use right purchases.  The payments were made in installments based on the negotiated payment process"); Kangtai's SQR at 2, Appx0007041 ("Kangtai debited the payment amount related to the purchase of land-use right in the 'account prepaid' . . . and then transferred to 'intangible assets'" and "Kangtai made payments for the land-use right purchases by several installments").  And more important, the documentation provided by both respondents supports the price paid for the land-use rights purchases as reported by Heze Huayi and Kangtai in their responses to Commerce's initial new subsidy allegation questionnaire.  *See* Heze Huayi NSAQ Resp., Appx0006682-0006695, Appx0085016-0085047; Kangtai NSAQ Resp., Appx0006696-0006709, Appx0085048-0085065. The respondents' payment information remained consistent, timely, and responsive throughout the underlying review, and the plaintiffs fail to undermine the probative value of this information, as Commerce explained.  IDM at 13, Appx0007122; *see also QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("The burden is on interested parties to provide Commerce with information in support of their arguments."); *OTR Wheel Eng'g, Inc. v. United States*, 901 F. Supp. 2d 1375, 1380 (Ct. Int'l Trade 2013) ("{T}he court will not re-weigh

the evidence presented to Commerce, and will uphold Commerce's determination provided it chooses from among the range of possible reasonable conclusions based on the record.").

The plaintiffs confusingly cite *Nippon Steel* to describe the two showings that Commerce must make before applying an adverse inference. *See* Bio-Lab Br. at 22-25. But in the following sentence, the plaintiffs argue that "Heze Huayi and Kangtai did not satisfy either criteria {*sic*}." *Id*. at 22. The United States Court of Appeals for the Federal Circuit explained that, before Commerce applies adverse facts available to a respondent, Commerce must make (1) an objective showing that a reasonable importer would have known that the information would be requested, and (2) a subjective showing that that the respondent not only has failed to promptly produce the requested information, but that "the failure to fully respond is the result of the respondent's lack of cooperation in either: (a) failing to keep and maintain all required records, or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its records." *Nippon Steel Corp.*, 337 F.3d at 1382. Indeed, Commerce agrees that the respondents did not satisfy either criterion, which is why Commerce did not apply an adverse inference. IDM at 15-16, Appx0007124-0007125. The plaintiffs continue to ignore the fact that respondents were cooperative and responsive to Commerce's initial and supplemental new subsidy allegation questionnaires.

Relatedly, the plaintiffs repeatedly refer this Court to the Federal Circuit's language in *Nippon Steel*–instructing how Commerce *may* apply an adverse inference. *See* Bio-Lab Br. at 22-25. But the Federal Circuit also explained situations in which an adverse inference is *not* warranted:

> An adverse inference may not be drawn merely from a failure to respond, *but only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made; i.e.*, under circumstances in which it is reasonable to

conclude that less than full cooperation has been shown.

*Nippon Steel Corp.*, 337 F.3d at 1383 (emphasis added).

Commerce appropriately considered whether to apply an adverse inference because, after re-evaluating the responses to the initial new subsidy allegation questionnaires, Commerce issued a supplemental questionnaire requesting that the respondents provide the following information:

- Provide the land-use right purchase contracts for each land-use rights purchase identified in Exhibit NSA-1 of {each company's} {new subsidy allegation} Response.
- Explain the steps {each company} took to determine the price paid for the land-use rights *in the absence of the land-use rights contracts.* Submit official documentation that {each used} in the course of {its} normal business activities supporting {its} response.
- Explain how {each company's} accounting system records and maintains information relating to each land-use rights purchase. Provide documentation supporting {its} response.
- Indicate the manner of payment for each land-use rights purchase (i.e., lump sum or (monthly/yearly) installments) and provide a summary of the terms for each land-use rights purchase. Provide documentation supporting {the} response.
- Tie each of the land-use rights purchases to {each company's} 2021 financial statements . . . including screenshots of the applicable ledger(s).

*See* Heze Huayi Supp. Questionnaire at 5, Appx0006962; Kangtai Supp. Questionnaire at 5-6, Appx0006967-0006968 (emphasis added). Commerce clearly stated the information it required in the absence of land-use rights contracts, to which the respondents timely provided all the requested information. Kangtai SQR at Exhibits SQ4-1, SQ4-2, Appx0085331-0085359; Heze Huayi SQR at SQ3-2, SQ3-3, and SQ3-4, Appx0085264-0085316. The plaintiffs, thus, fail to demonstrate why Commerce should have reasonably expected that more forthcoming responses should have been made in the absence of land-use contracts when Commerce specifically provided an alternate means of providing other information, such as the payment slips, and found

23

the provided information to be acceptable. *See* IDM at 13, Appx0007122; *see also Nippon Steel Corp.*, 337 F.3d at 1383.

At bottom, the plaintiffs have not cited any record evidence that the respondents provided fabricated information, engaged in inaccurate reporting, or purposely withheld information in a manner consistent with a party who fails to cooperate. *See* Bio-Lab Br. at 22-25. Accordingly, it is unclear on what basis the plaintiffs expect Commerce to find that an adverse inference is warranted. Rather, the respondents timely notified Commerce that they were unable to *currently* locate their land-use contracts, timely provided payment and other official business documentation requested from Commerce's questionnaire, and timely provided reconcilable source information (*i.e.*, payment slips) in the absence of land-use contracts. *See* IDM at 13-15, Appx0007122-007124. Therefore, substantial evidence supports Commerce's determination that an adverse inference is not warranted. *Cf. Hyundai Electric & Energy Systems Co., Ltd. v. United States*, 15 F.4th 1078, 1090 (Fed. Cir. 2021) (citing *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1361 (Fed. Cir. 2017)) ("{A}n adverse inference may be appropriate where an interested party has been notified of a defect in its questionnaire response yet continues to provide a defective response.").

## CONCLUSION

For these reasons, we respectfully request that this Court sustain the final determination and enter judgment in favor of the United States.

Respectfully submitted,

BRETT A. SHUMATE
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

24

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:                         /s/ Kara M. Westercamp
ASHLANDE GELIN                      KARA M. WESTERCAMP
Attorney                           Senior Trial Counsel
U.S. Department of Commerce        United States Department of Justice
Office of the Chief Counsel for Trade   Civil Division
  Enforcement and Compliance     Commercial Litigation Branch
1401 Constitution Avenue, NW        P.O. Box 480
Washington, D.C. 20230             Ben Franklin Station
                                   Washington, D.C. 20044
                                   (202) 305-7571
                                   Email: kara.m.westercamp@usdoj.gov

February 21, 2025                  *Attorneys for Defendant*

25

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court, the Court's Standard Chamber Procedures, and the Court's scheduling order in that it contains 6,634 words, including text, footnotes, and headings.

/s/Kara M. Westercamp

KARA M. WESTERCAMP

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| BIO-LAB, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Court No. 24-00118 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| JUANCHENG KANGTAI CHEMICAL CO., | ) |
| LTD., HEZE HUAYI CHEMICAL CO., LTD., | ) |
| | ) |
| Defendant-Intervenors. | ) |

## PROPOSED ORDER

Upon consideration of the plaintiffs' motion for judgment upon the agency record,

defendant's response, and all other pertinent papers, it is hereby

ORDERED that the plaintiffs' motion is denied; and it is further

ORDERED that judgment is entered for the United States.

_____
STEPHEN A. VADEN, JUDGE

Dated: _____
New York, NY