**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: The Honorable Stephen Alexander Vaden, Judge

| | | |
|---|---|---|
| BIO-LAB, INC., ET AL.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES<br><br>Defendant, | ) | Ct No. 24-00118 |

**RESPONSE BRIEF OF**
**DEFENDANT-INTERVENORS HEZE HUAYI CHEMICAL CO., LTD.**
**AND JUANCHENG KANGTAI CHEMICAL CO., LTD.**

Gregory S. Menegaz
Alexandra H. Salzman
Vivien J. Wang
**THE INTER-GLOBAL TRADE LAW GROUP, PLLC**
Suite 1101
1156 Fifteenth Street, N.W.
Washington, D.C. 20005
email: gmenegaz@igtlaw.com
*Counsel to Defendant-Intervenors*

Dated: March 7, 2025

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STANDARD OF REVIEW .......... 1

III. The Record Evidence Adequately Supports the Price Paid for land by Heze Huayi and Kangtai .......... 2

IV. The Department has no Basis to Apply AFA to the Respondents' Land Benefit .......... 6

V. CONCLUSION AND PRAYER FOR RELIEF .......... 8

# TABLE OF AUTHORITIES

## CASES

*Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197 (1938) ........................................................ 1-2

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d. 1301, 1327 (Fed. Cir. 2009) ................................5

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (CAFC 2003) ..............................................5

*Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714 (Ct. Int'l Trade 2001).......2

*Shandong TTCA Biochemistry Co., Ltd. v. United States*, 774 F. Supp. 2d 1317 (Ct. Int'l Trade 2011)..............................................................................................................................2

*Torrington Co. v. United States*, 19 C.LT. 403, 409 (1995), aff'd, 127 F.3d 1077 (Fed. Cir. 1997) ...................................................................................................................................2

*Universal Camera Corp. v. Nat 'I Labor Relations Bd.*, 340 U.S. 474 (1951)...............................2

## STATUTES

19 U.S.C. § 1516 a(b)(1)(B)(i)...........................................................................................1

19 U.S.C. § 1677e(a)..........................................................................................................6

19 U.S.C. 1677m(d) ...........................................................................................................4

## I. INTRODUCTION

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Defendant-Intervenors Heze Huayi Chemical Co., Ltd. ("Heze Huayi") and Juancheng Kangtai Chemical Co., Ltd. ("Kangtai") (collectively "Respondents") respectfully submit this response in opposition to Plaintiffs' Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporations' Motion for Judgment on the Agency Record and Memorandum in Support of Rule 56.2 Motion for Judgment on the Agency Record (December 17, 2024) ("Pl. R.56.2 Br.") ECF 26. In their moving brief, Plaintiffs ask for a remand to reconsider whether Heze Huayi and Kangtai provided sufficient evidence on the price paid for land-use rights and to reconsider whether Heze Huayi and Kangtai acted to the best of their ability such that adverse inferences are warranted. *See Chlorinated Isocyanurates From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2021,* 89 Fed. Reg. 49,149 (Dep't of Commerce June 11, 2024)., Appx0007136-0007137, incorporating the Department's Final Issues & Decision Memorandum ("Final IDM"), Appx0007110-0007126. The Court should not remand this matter for reconsideration of these issues. Respondents established the price paid for land-use rights and fully cooperated to the best of their ability. Respondent support and incorporate by reference Defendant United States' response brief. *See* U.S. Br. (February 21, 2025) ECF 30.

## II. STANDARD OF REVIEW

The Court will sustain any determination, finding, or conclusion found by an agency that is supported by "substantial evidence on the record," and is otherwise "in accordance with law." 19 U.S.C. § 1516 a(b)(1)(B)(i). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." C*onsol. Edison Co. of N.Y.*

*v. NLRB*, 305 U.S. 197, 229 (1938). Congress intended, and this Court has affirmed that, "Commerce is afforded great latitude in the choice of methodology to be employed in {AD and CVD} investigations." *Torrington Co. v. United States*, 19 C.LT. 403, 409 (1995), aff'd, 127 F.3d 1077 (Fed. Cir. 1997) (citation omitted). As long as Commerce's methodology is reasonable and its conclusions are supported by substantial evidence, "the Court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." *Id*. (citation omitted).

Thus, under the substantial evidence standard, "{t} he reviewing court may not, 'even as to matters not requiring expertise ... displace the {agency's} choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Shandong TTCA Biochemistry Co., Ltd. v. United States*, 774 F. Supp. 2d 1317, 1321 (Ct. Int'l Trade 2011) (citing *Universal Camera Corp. v. Nat 'I Labor Relations Bd.*, 340 U.S. 474,488 (1951)); s*ee also Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001) (the Court sustains determinations that are reasonable a supported by the record as a whole, "even if there is some evidence that detracts from the agency's conclusion.").

**I. The Record Evidence Adequately Supports the Price Paid for land by Heze Huayi and Kangtai.**

The Department already drew an adverse inference from GOC's lack of response and found that GOC's provision of land-use rights constitutes a financial contribution that is specific. Prelim. IDM at 16, Appx0006792. Then the Department followed its normal methodology and multiplied the land benchmark by the total area of the land the Respondents' purchased and

subtracted the price paid as reported by the Respondents to derive the total benefit. Prelim. IDM at 25. However, Plaintiffs argue that the Department cannot rely on the price provided by Respondents, alleging that Respondents failed to provide adequate documentation that established the reported price paid. Pet. R56.2 at 17-21. Each Respondent provided the documentation reasonably available and reconcilable to their relevant audited books and records. The Department properly found this documentation was adequate and reliable.

Specifically, in the New Subsidy Allegation Questionnaire, the Department asked each Respondent for the first time regarding their purchases of land-use rights. The Department asked for information on the date of acquisition, identity of selling, location, area, price paid, terms, and a copy of the land-use contract and land-use certificates. Kangtai and Heze Huayi each provided answers to these questions and provided the land-use certificates. Heze Huayi NSA Qre at 1-2, Appx0085022-0085023; Kangtai NSA Qre at 2-3, Appx0085054-0085056. Heze Huayi provided the land use right certificates, but explained that they could not provide the land-use right contracts because it had been many years and they could not locate them. Indeed, Heze Huayi purchased land use rights 10-20 years before this POR and even before the 2013 investigation. *Id*. at Exhibit NSA-1 & 2, Appx0085025-0085047. Kangtai also provided the land-use right certificates, but likewise explained that they could not locate the land-use right contracts because it had been many years; Kangtai acquired the rights before the 2013 investigation. Kangtai NSA Qre at 2, Exhibit NSA-1, and NSA-2, Appx00850545, Appx0085058-0085065. Then in a later supplemental questionnaire response, respondents provided the purchase slips for land and reconciled those land purchase payments to their financial statements. *See* Heze Huayi Supp Qre (April 17, 2024), Appx0085218-00085222; *see also* Kangtai Supp Qre (April 18, 2024), Appx0085223-0085228.

The Department was satisfied with the information that Respondents provided and documented for their land use rights and calculated the benefit per its usual practice. Plaintiffs argue that Kangtai and Heze Huayi should have provided the contracts or provided some alternative documentation to support the price of the land purchase. However, Kangtai and Heze Huayi provided the information available and fully cooperated with the Department's request to the best of its ability under the circumstance. Indeed, the Department recognized this by not further requesting information or clarification, as would be required otherwise under 19 U.S.C. 1677m(d).

Throughout their brief, Plaintiffs refer to Kangtai and Heze Huayi's land payment documentation as self-generated or self-selected. This misconstrues the factual record and the type of documentation that companies normally maintain. Plaintiffs surmise that without the land contracts, the price paid cannot be established. But the purchase contract is not the decisive documentation of the actual price paid; instead, the proofs of payments determine and demonstrate the actual price paid. Each Respondent provided the purchase slips for land and reconciled those land purchase payments to their financial statements. *See* Heze Huayi Supp Qre (April 17, 2024), Appx0085218-00085222; *see also* Kangtai Supp Qre (April 18, 2024), Appx0085223-0085228. This is definitive proof of the price actually paid that ties to their books and records maintained in the ordinary course. This confirms the reported information and is more accurate than a purchase contract.

Further, Plaintiffs' questioning that these payment slips are self-selected and may not be related to the purchase of land are based on a fundamental accounting mistake. Only payments related to land-use right purchases could be recorded in intangible assets account. Taxes and fees cannot be recorded under an intangible assets account. The payment records and presented

are not "self-selected" but rather are the payments in the intangible assets accounts related to land. The payment slips tie to the intangible assets ledger, and Heze Huayi's and Kangtai's accounts were audited by public certified accountants *every year*. This is verifiable information audited by outside accountant every year.

Plaintiffs next attempt to make issue out of different payees and amounts in these payment slips. Pet. R56.2 Br. at 20-22. However, Heze Huayi and Kangtai followed the instructions of the local government for the payment amount and payee. It is the local government's discretion for the land-use right payment to be made directly to the Bureau of Land and Resources Bureau of Finance or the Juancheng Bureau of Local Taxation, etc. Heze Huayi also marked the specific land area on each payment slip in the normal business records, which demonstrated that the payment was for land-use right purchases. Both Respondents' payment slips are reliable even though they are not third party issued documents. They reconcile with the bank deposits and ultimately to Respondents' audited books and records. Plaintiffs' brief reads like these documents exist in a self-generated void with the Respondents, but this ignores basic business sense. Respondents are businesses and their records and payments must follow the legal requirements and are audited by third-party independent auditors.

Petitioners' arguments amount to pure speculation. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d. 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute substantial evidence."). Respondents have provided available, reliable pricing information for their land-use rights. This Court should uphold Commerce's well-grounded reliance on its information and calculation of land use-rights for Respondents.

## II. The Department has no Basis to Apply AFA to the Respondents' Land Benefit.

The Department can only resort to AFA if necessary information is missing from the record or a respondent withheld information or failed to cooperate to the best of its ability. 19 U.S.C. § 1677e(a). Since Respondents have provided reliable pricing information for their land-use rights, there is no necessary missing information. Respondents also did not withhold information and have acted to the best of their ability to comply with all requests for information, thus, the Department properly did not resort to adverse facts available. It may be preferable that Respondents had their land contracts as well, but Respondents have nonetheless still provided reliable, verifiable information to establishes the necessary information, their land purchase price. The statute does not demand perfection. *See Nippon Steel Corp. v. United States*, 337 F.3d 1373 (CAFC 2003). In *Nippon Steel*, the importer, had total possession and control of the data that it first refused to give to Commerce, but then provided it to Commerce too late. *Id*. at 1377-78, 1381-83. The court "{b}efore making an adverse inference, Commerce must examine respondent's actions and assess the extent of respondent's abilities, efforts, and cooperation in responding to Commerce's requests for information." *Id*. Respondents here, in contrast, provided all information it had during the review.

Plaintiffs complain that Respondents should have known they needed to maintain the contracts given the original investigation was in 2013. First, even in the 2013 investigation, this was already after the companies purchased their land use rights. Most critically, land use at LTAR has never been alleged in this Order until this review in 2023. Indeed, petitioner had to raise it in a new subsidy allegation. By petitioner's own assertion and filing, the LTAR land program is new. Both companies in full cooperation, as in all prior reviews, provided all programs they understood would potentially be responsive to an allegation. But it was only when

the land LTAR program was actually alleged by petitioner on May 11, 2023 and then initiated on November 2, 2023 that Respondents were on notice that such information would be needed. Respondents cannot be faulted for not maintaining contracts for land when it was not understood that it would be considered a benefit as the Department itself had not found that to be the case and petitioner itself had not alleged it. The statute does not require perfection; it only requires maintenance of necessary documents maintained for various periods of time under local accounting laws and practice. Respondents can only provide the documents that they reasonably maintain, and this is what is required under the statute.

Plaintiffs cite to cases where the Department has applied adverse facts available when a company had inadequate record keeping. Pet. R56.2 Br. at 12-15. But each of these cases is easily distinguishable from the circumstances of the review at hand. For example, in *Hand Trucks from China*, it was not only that the respondent failed to provide the contract for its share transfer, but the respondent failed to provide <u>any</u> documentation for its share transfer. Similarly, in *Glycine from India*, the Respondent also could not provide any information to support its denial of an affiliation. Respondents have provided documentation on its land purchase and payments that reconcile to its audited books and record. In *Stainless Steel Bar from the UK*, the respondent entirely lost cost of sales information. Cost of sales information is required information for normal business operations and accounting requirements. But the land contracts are not required to be maintained by Respondents, Respondents did maintain the required documentation on their purchase and provided it the Department. Thus, each of these administrative proceedings is readily distinguishable. On this record, there is no gap due to the reasonable and definitive records provided by Respondents. Hence, the legal predicate (i.e., a gap in the record) to resort to facts available has not been satisfied on this record.

Similarly, the Court cases cited by Plaintiffs also are unpersuasive. Plaintiffs cite to *Hyundai Electric*, but the company in that case failed to provide information on what country production occurred. The Court properly found this was very basic, essential information that any company would maintain in its normal records, all the more so because the company had been a respondent before and knows the location of production is needed in any review. In contrast in this case, the land contracts are not required to be maintained and Respondents were not on notice over ten years ago that they should have maintained them for Commerce because there was no land LTAR program. In *Deosen Biochemical*, Commerce requested Export Service Agreements in the initial questionnaire in two reviews and in supplemental questionnaires, and the company did not provide them until putting the information in a final questionnaire response when it was not requested. The Court agreed that the company failed to act to the best of its ability by not responding to multiple requests for information and that this was not an unintentional omission in the earlier responses. In contrast in this case, Respondents explained immediately in their responses to the first request for land documentation why they did not have the contracts, how they exercised best efforts to obtain them, and provided all documentation they did have. Moreover, the information Respondents provided does establish the necessary land price information, unlike in *Deosen Biochemical* where necessary information was missing without the Export Service Agreements. Lastly, in *Sidenor Industries*, the company failed to provide requested reconciliations, which was necessary and available information to corroborate the quantity of its steel bar purchases. But here, Respondents did provide available purchase information that was reconcilable to their books and records. Plaintiffs have failed to, and indeed cannot, explain how the cited precedent is at all similar to the facts of this case. Respondents maintained the reasonably required documentation for their land purchases, explained why other

documentation was not available, provided the maintained land documentation to the Department, and established its reliability by tying it to its books and records.

In sum, the Department properly found it was not missing necessary information on the record and the Respondents have fully cooperated to the best of their ability with the Department's requests for information. The Court should uphold the Department's determination not to resort to adverse facts available.

## III. CONCLUSION AND PRAYER FOR RELIEF

In light of the foregoing, we respectfully request that this Court deny Plaintiffs' motion, sustain the Department's final results, and enter judgment for the United States.

Respectfully submitted,

/s/ *Gregory S. Menegaz*
Gregory S. Menegaz
Alexandra H. Salzman
Vivien J. Wang
**THE INTER-GLOBAL TRADE LAW GROUP, PLLC**
Suite 1101
1156 Fifteenth Street, N.W.
Washington, D.C. 20005
email: gmenegaz@igtlaw.com
*Counsel to Defendant-Intervenors*

Dated: March 7, 2025

**WORD COUNT CERTIFICATE OF COMPLIANCE**

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 2,519 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz