**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE**

| | |
|---|---|
| BIO-LAB, INC., ET AL. | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| *Defendant,* | ) |
| AND | ) |
| | ) |
| JUANCHENG KANGTAI CHEMICAL CO., LTD. AND | ) |
| HEZE HUAYI CHEMICAL CO., LTD., | ) |
| *Defendant-Intervenors.* | ) |
| | ) |

Ct. No.  24-00118

**NON-CONFIDENTIAL VERSION**
Business Proprietary Information Removed from Brackets on Pages i, 2-3, 6, 9-10, 12-14

**PLAINTIFFS' REPLY BRIEF**

James R. Cannon Jr.
Chase J. Dunn
CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave, N.W., Suite 300
Washington, D.C. 20037
(202) 567-2300

*Counsel to Plaintiffs Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation*

Date:   April 4, 2025

i

## **Table of Contents**

**Page**

ARGUMENT ........................................................................................................ 1

I.   Commerce's Decision to Rely on Land-Use Prices Reported by Heze Huayi and
     Kangtai, Rather than Make an Adverse Inference Pursuant to § 1677e(b), Was
     Not Supported by Substantial Evidence or In Accordance With Law ........................... 3

   A. Inadequate Record Keeping is a Textbook Example of Failing to Act to
      the Best of One's Ability ................................................................................... 3

   B. The Passage of Time Does Not Excuse Inadequate Record Keeping
      and Contracts are Precisely the Type of Information Commerce
      Expects Exporters to Maintain in the Normal Course of Business ............................ 5

   C. Respondents' Self-Generated Payment Documentation Was Not Tied
      to the Land-Use Contracts or the Land-Use Rights in Question and
      Does Not Ameliorate Respondents' Failure to Act to the Best of Their
      Ability .......................................................................................................... 8

      1.   The Land-Use Certificates Do Not Establish the Terms or the Price Set Forth in
           the Land-Use Contracts .......................................................................... 9

      2.   The Payment Information Provided by Heze Huayi and Kangtai Cannot be Tied
           to the Land-Use Rights Contract or the Land Parcels in Question ................... 10

      3.   The [                          ] Reasonably Indicate the Payments were Not Related to
           Land-Use Rights ................................................................................... 12

      4.   Commerce's Determination that Heze Huayi and Kangtai Cooperated to the
           Best of Their Ability is Not Supported by Substantial Evidence or Consistent
           with the Statute ................................................................................... 14

   D. Commerce Abused its Discretion by Failing to Apply an Adverse
      Inference in Response to Heze Huayi's and Kangtai's Inadequate
      Record Keeping ............................................................................................ 15

CONCLUSION .................................................................................................. 16

## Table of Authorities

**Page(s)**

**Statutes**

19 U.S.C. § 1677e(b) ..............................................................................................3, 14, 16

**Court Decisions**

*Alabama Aircraft Industries, Inc.-Birmingham v. United States*, 586
F.3d 1372, 1375 (Fed. Cir. 2009) .........................................................................14

*Appvion, Inc. v. United States*, 100 F. Supp. 3d 1374 (Ct. Int'l Trade
2015) .................................................................................................................8, 15

*Bio-Lab, Inc. v. United States*, 435 F. Supp. 3d 1361 (Ct. Int'l Trade
2020) ........................................................................................................................15

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) ............................14

*Elkem Metals Co. v. United States*, 441 F. Supp. 2d 1292 (Ct. Int'l Trade
2006) ........................................................................................................................11

*CS Wind Vietnam Co. v. United States*, 832 F.3d 1367 (Fed. Cir. 2016) .....................12

*Daewoo Elecs. Co. v. Int'l Union of Elec., Elec., Technical, Salaried &
Mach. Workers, AFL-CIO*, 6 F.3d 1511 (Fed. Cir. 1993)..............................................13

*Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283 (Fed. Cir.
2021) ......................................................................................................................5, 15

*Goodluck India Limited v. United States*, 11 F.4th 1335 (Fed. Cir. 2021) ...................15

*Hyundai Electric & Energy Systems Co., Ltd. v. United States*, 15 F.4th
1078 (Fed. Cir. 2021)................................................................................................5, 15

*INS v. Yang,* 519 U.S. 26 (1996) ..................................................................................16

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003)..................3, 4, 6, 15

*Rhodia, Inc. v. United States*, 185 F. Supp. 2d 1343 (Ct. Int'l Trade
2001) ........................................................................................................................11

*Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330 (Fed.
Cir. 2002) ...................................................................................................................5

*Viet I-Mei Frozen Foods Co. v. United States*, 839 F.3d 1099 (Fed. Cir.
2016) ........................................................................................................................15

*Xi'an Metals & Minerals Import & Export Co., Ltd. v. United States*, 50 F.4th 98 (Fed. Cir. 2022) ........................................................................................5

**Administrative Determinations**

*Hand Trucks and Certain Parts Thereof from the People's Republic of China; Final Results of 2005-2006 Administrative Review*, 73 Fed. Reg. 43684 (July 28, 2008) ........................................................................ 7-8, 15

*Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Bar From the United Kingdom*, 67 Fed. Reg. 3146 (Jan. 23, 2002) ................................................................................... 4, 7-8, 15

*Refillable Stainless Steel Kegs from the People's Republic of China: Final Results of the Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 25564 (Apr. 11, 2024) ...........................................................4

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade, Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation (hereinafter "Bio-Lab, IWC, and OxyChem" or "Plaintiffs"), respectfully responds to the response briefs filed by Defendant, the United States ("Commerce"), and Defendant-Intervenors Juancheng Kangtai Chemical Co., Ltd. ("Kangtai") and Heze Huayi Chemical Co., Ltd. ("Heze Huayi") (collectively "respondents"). *See* Defendant's Response in Opposition to Plaintiffs' Motion for Judgement Upon the Agency Record (Feb. 21, 2025) ("Defendant's Br."); Response Brief of Defendant-Intervenors Heze Huayi Chemical Co., Ltd. and Juancheng Kangtai Chemical Co., Ltd. (Mar. 7, 2025) ("Intervenor's Br.").

## ARGUMENT

Heze Huayi and Kangtai reported purchasing land-use rights from the Government of China, each with a use term of 50 years. To evaluate whether the land-use purchases were for less than adequate remuneration, Commerce requested – twice – that Heze Huayi and Kangtai provide the official land-use contracts signed with the government to establish the terms of sale and the price paid. In response, Heze Huayi and Kangtai admitted that they had entered contracts for the purchase of land-use rights, but averred that they lost the original and any copies of contracts. Neither company provided any independent documentation confirming the original price for the land-use rights. *See* IDM at 13, Appx0007122 (recognizing that "the record is devoid of…any third-party documentation demonstrating that the reported amounts are the contracted values of the land purchases"); *see also id.* at 14, Appx0007123 (acknowledging that "the record lacks the land-use rights contracts which are required to confirm the price paid for the land parcels").

Notwithstanding Heze Huayi's and Kangtai's inadequate record keeping, Commerce refused to apply an adverse inference to determine the price paid for the land-use rights. Instead, Commerce relied on a collection of the payment slips that were not tied to the land in question, did not identify the original purchase price, showed reflected irregular payment amounts and dates, and indicated payments to [                              ]. This "self-generated documentation" purporting to show the original purchase prices for land-use rights does not establish those prices without the contracts. As such, Commerce erred by relying on these data to determine the net benefit of this program.

Defendant argues that the decision not to apply an adverse inference is supported by substantial evidence because respondents supplied alternative evidence on which the "total amount paid for their land-use rights" might be calculated. Defendant's Br. at 9, 12-19; *see also* Intervenors' Br. at 3-5. Defendant asserts, in addition, that by submitting evidence of payments made for land-use rights, respondents "cooperated to the best of their ability." Defendant's Br. at 13; *see also* Intervenors' Br. at 8-9 (arguing that the payment data could be tied to company books and records).

These arguments find no support in the record, agency practice, or judicial precedent. As discussed below, Commerce and the Court of Appeals for the Federal Circuit have repeatedly held that a respondent's failure to maintain contracts and other business records in the normal course of business constitutes a failure to cooperate to the best of one's ability under the statute. Commerce's determination to the contrary in this case is not supported by substantial evidence, and its failure to apply an adverse inference in accordance with longstanding practice renders its determination not in accordance with law. Moreover, although the self-generated payment documentation provided by Heze Huayi and Kangtai may be tied to their financial statements,

2

the payment documentation was never tied to the land-use rights in question, did not identify the

contracted purchase price, reflected irregular payment amounts and dates, and indicated

payments to [                                        ] rather than [          ] payee.

Accordingly, Commerce's determination that this payment documentation reflected the "actual

prices paid for the land-use rights" in question is unsupported by substantial evidence.

I. **Commerce's Decision to Rely on Land-Use Prices Reported by Heze Huayi and Kangtai, Rather than Make an Adverse Inference Pursuant to § 1677e(b), Was Not Supported by Substantial Evidence or In Accordance With Law**

A. **Inadequate Record Keeping is a Textbook Example of Failing to Act to the Best of One's Ability**

Commerce argues that it reasonably declined to apply an adverse inference in response to

Heze Huayi's and Kangtai's failure to maintain and provide the land-use contracts because,

although "'inattentiveness' or 'carelessness' merits a finding that a respondent has failed to

cooperate, the statute does not require perfection and recognizes that mistakes sometimes occur."

Defendant's Br. at 14. Intervenors likewise argue that the "statute does not demand perfection."

Intervenors' Br. at 6 (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir.

2003)). This argument is a red herring. Although the statute does not demand perfection, the

Federal Circuit and Commerce have repeatedly held that inadequate record keeping of

documents generated in the normal course of business, including contracts, constitutes a failure

to act to the best of one's ability under the statute.

Although the statute does not define the "best of its ability" standard, the Federal Circuit

has confirmed that the standard does not "condone inattentiveness, carelessness, or *inadequate*

*record keeping*." *Nippon Steel,* 337 F.3d at 1381-82 (emphasis added). Put differently, the

"statute requires a factual assessment of the extent to which a respondent *keeps and maintains*

*reasonable records* and the degree to which the respondent cooperates in investigating those records and in providing Commerce with the requested information." *Id.* at 1383 (emphasis added). Critically, "it is presumed that respondents are familiar with their own records" and it is "*not an excuse* that the employee assigned to prepare a response does not know what files exist, *or where they are kept*." *Id.* (emphasis added).

Reflecting the holding in *Nippon Steel*, Commerce's own practice is that an adverse inference is warranted when respondents lose, misplace, or otherwise cannot locate records typically kept in the normal course of business. For example, in *Stainless Steel Bar from the UK,* Commerce held that absent "a rational and detailed explanation from a party regarding important business information that was present but mysteriously 'lost,' the *Department must rely on a policy of discouraging parties from withholding or destroying information*." *Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Bar From the United Kingdom*, 67 Fed. Reg. 3146 (Jan. 23, 2002) ("*Stainless Steel Bar from UK*"), IDM at Comment 1 (emphasis added). Therefore, where "a respondent has been requested to provide data that does exist, and the respondent fails to provide that data without adequate demonstration of its inability to respond, the Department is entitled to use facts available, and *further to take an adverse inference*." *Id.* (emphasis added); *see also Refillable Stainless Steel Kegs from the People's Republic of China: Final Results of the Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 25564 (Apr. 11, 2024), IDM at Comment 1 (holding that "Jingye failed to act to the best of its ability in accordance with 776(b)(1) of the Act because of its failure to maintain adequate record keeping" and that "Commerce's practice and court precedent make clear that Commerce cannot condone Jingye's 'inadequate record keeping'").

The Federal Circuit has repeatedly affirmed Commerce's use of an adverse inference in selecting from the facts available when a respondent fails to adequately maintain records and to provide necessary information requested by Commerce. In *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1336 (Fed. Cir. 2002), the Court held that Commerce reasonably expected an importer to preserve records of accused antidumping activity and its failure to do so warranted an adverse inference. In *Xi'an Metals & Minerals Import & Export Co., Ltd. v. United States*, 50 F.4th 98, 109 (Fed. Cir. 2022), the Court held that Commerce reasonably expected a respondent to provide product-specific factors of production data and failure to provide that information warranted an adverse inference. In *Hyundai Electric & Energy Systems Co., Ltd. v. United States*, 15 F.4th 1078, 1090 (Fed. Cir. 2021), the Court held that Commerce reasonably applied an adverse inference where the respondent "only provided the requested level of detail for one out of six cost categories of product-specific cost information" and further noted that, to "the extent that the shortcomings of Hyundai's responses are attributable to its record keeping, that alone does not avoid an adverse inference."

Put simply, inadequate record keeping or the inability to produce necessary and foundational documentation generated in the normal course of business is a textbook example of failing to act to the best of one's ability. *See Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1297 (Fed. Cir. 2021) ("Whether through active misrepresentation or 'inadequate record keeping,' Deacero failed to 'act to the best of its ability.'").

## B. The Passage of Time Does Not Excuse Inadequate Record Keeping and Contracts are Precisely the Type of Information Commerce Expects Exporters to Maintain in the Normal Course of Business

Here, it is undisputed that Heze Huayi and Kangtai failed to maintain adequate records by losing land-use contracts signed with the Government of China and failing to provide such

contracts upon Commerce's request. Commerce attempts to excuse Heze Huayi and Kangtai from their inadequate record keeping by explaining that the contracts were "obtained more than a decade ago" and respondents "could not *currently* locate land-use rights contracts…based on the deadlines that Commerce had provided." Defendant's Br. at 12. Similarly, Intervenors suggest that land-use contracts are not business records typically maintained in the normal course of business and therefore Heze Huayi's and Kangtai's failure to maintain them did not constitute inadequate record keeping. *See* Intervenors' Br. at 7 ("But the land contracts are not required to be maintained by Respondents"). These argument strain credulity.

*First*, the passage of time is not a justification for inadequate record keeping. Heze Huayi signed land-use rights contracts for [      ] different parcels of land in [

], each with a term of 50 years. *See* Appx0085024, Appx0085027. Kangtai signed a land-use contract for [           ] of land in [                ] a term of 50 years. *See* Appx0085055, Appx0085059. Notwithstanding the 50-year contract terms, Heze Huayi and Kangtai both admit that they lost these contracts well before even [                ] of the contract term. *See* Appx0085023; Appx0085055. This is not "reasonable" record keeping, particularly with respect to documents akin to deeds; *i.e.*, that permit the holders to possess the land on which their facilities operate. *Cf. Nippon Steel,* 337 F.3d at 1381-82 ("statute requires a factual assessment of the extent to which a respondent *keeps and maintains reasonable records*" and it is "*not an excuse* that the employee assigned to prepare a response does not know what files exist, *or where they are kept*") (emphasis added).

*Second*, the respondents were provided with ample time to review their records and provide the contracts upon request. Commerce initiated a new subsidy allegation and issued questionnaires to Heze Huayi and Kangtai on November 11, 2023. Appx0006639-0006642,

Appx0006647-0006651, Appx0006652-0006656. Heze Huayi and Kangtai refused to provide the land-use contracts in their response to Commerce's questionnaire, admitting that they were lost. Over five months later, Commerce issued supplemental questionnaires to Heze Huayi and Kangtai on April 3 and April 4, 2024, respectively. *See* Appx0085218-0085222, Appx0085223-0085228. Certainly by that point, Heze Huayi and Kangtai had ample time to search their own records or obtain copies from the government of China. Yet, they failed to do so. *See* Appx0085229, Appx0085321. This does not constitute a "rational and detailed explanation … regarding important business information that was present but mysteriously 'lost.'" *Stainless Steel Bar from UK*, IDM at Comment 1.

Third, Intervenors' argument that land-use contracts are not the kind of business records typically maintained in the normal course of business is without merit and inconsistent with Commerce practice. *See* Intervenors' Br. at 7. Land-use rights contracts are the official agreement between the respondents and the government that set the price and terms of the purchase. It is for this reason that Commerce stated: "land-use rights contracts {} are required to confirm the price paid for the land parcels" and "are necessary documents needed for Commerce to fully analyze the program." IDM at 14, Appx0007123. Moreover, Commerce has previously held that contracts are the kind of document that a reasonable exporter should expect to be called on to produce. *See, e.g., Hand Trucks and Certain Parts Thereof from the People's Republic of China; Final Results of 2005-2006 Administrative Review*, 73 Fed. Reg. 43684 (July 28, 2008) ("*Hand Trucks from China*"), IDM at Comment 1 (holding that "Taifa's inability to provide *the contract between the parties* that it claimed *as the basis of payment* for the share transfer showed that it did not 'keep and maintain full and complete records documenting the information that a

reasonable importer should anticipate being called upon to produce'") (emphasis added). The same logic applies here with respect to Heze Huayi's and Kangtai's land-use contracts.

In sum, "{c}ooperating to the best of its ability means that the company must: take reasonable steps to keep and maintain full and complete records documenting the information that a reasonable {exporter} should anticipate being called upon to produce….." *Appvion, Inc. v. United States*, 100 F. Supp. 3d 1374, 1382 (Ct. Int'l Trade 2015) (emphasis added). Here, Heze Huayi and Kangtai "lost" land-use rights contracts securing their possession of real property vital to their operations. Notwithstanding five months to review their records or contact the government to obtain a copies of the contracts, Heze Huayi and Kangtai failed to do so. As Commerce held in *Hand Trucks from China* that contracts between parties are precisely the type of documentation a reasonable exporter should anticipate being called upon to produce. And yet, here, Commerce ignored its "policy of discouraging parties from withholding or destroying information" by failing to impose an adverse inference in the selection of facts otherwise available. *Stainless Steel Bar from UK*, IDM at Comment 1.

### C. Respondents' Self-Generated Payment Documentation Was Not Tied to the Land-Use Contracts or the Land-Use Rights in Question and Does Not Ameliorate Respondents' Failure to Act to the Best of Their Ability

Commerce contends that the payment slips provided by Heze Huayi and Kangtai "provid{ed} reconcilable documentation to support the actual prices paid for the land-use rights." Defendant's Br. at 12-13; *see also* Intervenor's Br. at 4-5. Commerce further contends that "nothing on the record contradicts the respondents' reported payment information, and the plaintiffs' arguments regarding purported irregularities are grounded in speculation." Defendant's Br. at 19; *see also* Intervenors' Br. at 5. But neither Commerce nor the Intervenors address the elephant in the room: the land-use certificates, the self-generated payment tables, and

the payment slips provided by Heze Huayi and Kangtai do not identify the contract price, the terms of sale, or even the land-use rights in question. Accordingly, there is no record evidence which confirms that the reported payment information was related to the land-use rights in question, that the correct amount was paid, or that the payments were made at the right time or to the right [                    ].

### 1. The Land-Use Certificates Do Not Establish the Terms or the Price Set Forth in the Land-Use Contracts

At the outset, the net benefit provided by government-supplied, land-use rights is determined by comparing the purchase price for those rights with an appropriate benchmark. *See* 19 C.F.R. § 351.511. It follows that to determine whether a subsidy is bestowed, Commerce needs the original price paid by the purchaser and the original terms of sale. A stream of payment slips, alone, does not establish that price.

Commerce's contention that Heze Huayi and Kangtai "were able to provide payment information (*e.g.,* land-use certificates) to report the total amount paid for their land-use rights purchases" misstates the record evidence. Defendant's Br. at 9. On their face, the payments slip submitted by Heze Huayi and Kangtai do not show whether the payments were related to specific plots of land. *See* Appx0085268-0085295, Appx0085331-0085357. Nor do the payment slips indicate whether the payments included interest, taxes, or other fees that might be included in an installment purchase or payment plan.

It is true that the land-use certificates provided by Heze Huayi and Kangtai identify the land-use rights holder, the location and area of the land, and the length or term of the land-use rights. *See* Appx0085238-0085263, Appx0085060-0085065. But, these certificates do not identify any details regarding the terms of the land-use rights contracts, including the price or payment terms. *See id.* Hence, the land-use certificates do not provide any independent support

for Commerce's claim that the payment slips establish the "total amount paid for their land-use rights purchases." Defendant's Br. at 9.

### 2. *The Payment Information Provided by Heze Huayi and Kangtai Cannot be Tied to the Land-Use Rights Contract or the Land Parcels in Question*

The payment tables provided by respondents were not documents or ledgers maintained by the companies in the ordinary course of business. These tables were created to respond to Commerce's questionnaires. Moreover, the data describe a [          ] series of payment slips, self-selected by respondents, ostensibly demonstrating payment to [

] for the land-use rights. *See* Appx0085264-0085316, Appx0085331-0085359. Yet, according to Commerce, these documents demonstrate the "actual prices paid for the land-use rights," Defendant's Br. at 13. As discussed below, however, these documents fail to establish the original contract price for the land-use rights. No record evidence demonstrates that the payment information was even tied the land-use rights contracts or reflects the terms of sale or contract price.

*First*, although the onus is on the respondents to submit adequate evidence to establish the contract price of the land-use rights, Commerce argues that the Plaintiff's challenge amounts to "speculation." Defendant's Br. at 20. Bio-IWC, and OxyChem do not bear the burden to establish the original price of the land-use rights. And, the payment slips themselves do not identify any specific parcels, contract numbers, or other information that would tie the payments to the land parcels in question. For example, Heze Huayi's and Kangtai's land-use certificates identify a [                                        ] associated with each parcel of land. *See* Appx0085247, Appx0085252, Appx0085256, Appx0085261, Appx0085062. The payment slips provided by Heze Huayi and Kangtai do not identify the [

]. *See* Appx0085268-0085295, Appx0085331-0085357.

10

The payment slips also do not contain any other indicia that the payments were for the specific land-use rights in question. *See id.* It follows that the record does not support the conclusion that the payment slips reflect the actual price paid for the land-use rights. *Cf. Elkem Metals Co. v. United States*, 441 F. Supp. 2d 1292, 1301 (Ct. Int'l Trade 2006) ("it is not reasonable for the court to affirm a determination…when there is no data tending to confirm a central part of {the} analysis").

*Second*, Commerce asserts that "no evidence indicates that the respondents substantially overstated the original purchase prices" or "provided timing and payment amounts that are inconsistent with their land-use contract." Defendant's Br. at 20. Again, though, the evidence submitted by respondents amounts to the sum of payments identified on payment slips. There is nothing to link these payment to the original purchase prices. Without the land-use contracts, Commerce had no way to confirm the original purchase price at all. Indeed,  Commerce admitted that the "record is devoid of…any third party documentation demonstrating that the reported {payment} amounts are the contracted values of the land purchases." IDM at 13, Appx0007122.

This Court has explained that Commerce "must articulate a 'rational connection between the facts found and the choice made.'" *Rhodia, Inc. v. United States*, 185 F. Supp. 2d 1343, 1348 (Ct. Int'l Trade 2001). Here, there is no rational basis for inferring that the self-generated payment information provided by Heze Huayi and Kangtai reflect the actual contract price or terms of sale because there is no record evidence identifying the contract price or terms of sale.

*Third*, Commerce contends that "both companies indicated that they made these payments in installments, and they described how they recorded these installment payments in their accounting system," further supporting the accuracy of the reported information. Defendant's Br. at 21. Yet, it is logical that an installment contract would include interest

11

charges or other fees to reflect the delayed payment of the original purchase price. Also, the payment slips proffered by Heze Huayi and Kangtai do not show a pattern at all consistent with typical installment contracts, either in terms of the amount of the payments or the payment schedule. *See* Plaintiffs' Br. at 20-21. Commerce's failure to address the irregular payment amounts or payment schedule in its response further demonstrates that Commerce's determination in not supported by substantial evidence. *See CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.").

*Finally*, Commerce argues that the payment amounts reported by respondents "tie to their 2021 audited financial statements." Defendant's Br. at 21; *see also* Intervenors' Br. at 4 (arguing that the "purchase contract is not the decisive documentation of the actual price paid; instead, the proofs of payment determine and demonstrate the actual price paid"). Even so, whether or not the payments were actually made, which is reflected by their financial statements, is undisputed. What Commerce fails to grapple with, is that neither Heze Huayi nor Kangtai tied the payment slip to the land-use rights in question or the actual terms or prices established in the land-use contracts. That is why Commerce recognized that the information provided "is not a substitute for the land-use rights contracts themselves" and that the "land-use rights contracts {} are required to confirm the price paid for the land parcels." IDM at 13-14, Appx0007122-0007123.

### 3.  The [                    ] Reasonably Indicate the Payments were Not Related to Land-Use Rights

Heze Huayi's and Kangtai's collection of payment slips reflect payment to [

], none of which were connected to the original land-use contracts.

For example, Heze Huayi's collection of check stubs shows checks being written to [     ]

payees: [

12

]. Appx0085266-0085295. The alleged "payments" to the

[                                    ], as well as the reference to [

            ], reasonably indicate that these payments were [      ] not installment

payments for the purchase of land-use rights. *See id.* Likewise, Kangtai, the payment slips

identify the party being paid as [                                    ]. *See* Appx0085334,

Appx0085336-0085337, Appx0085339-0085340, Appx0085346-0085350, Appx0085352. The

accompanying [                                    ] ledger also included in the exhibit shows

the Payee as [                                                        ].

Appx0085341.

Heze Huayi or Kangtai failed to demonstrate that any of the payees were the actual

sellers of land-use rights. Although Commerce claims that the record does not prove the

opposite, Defendant's Br. at 20, this argument misses the mark. Commerce must make a

determination that is supported by substantial evidence. Confronted with payment slips that do

not on their face tie to an original contract price, Commerce must make a "reasonable inference"

based on "record support." *Daewoo Elecs. Co. v. Int'l Union of Elec., Elec., Technical, Salaried

& Mach. Workers, AFL-CIO*, 6 F.3d 1511, 1520 (Fed. Cir. 1993). Here, there is no evidence to

support the inference that the payments made to [                                    ] were

consistent with the land-use contracts or were made to the government seller of the land, and

thus were payments for the land-use rights.

Similarly, the Intervenors contend that payments to [                    ] was reasonable

because "Heze Huayi and Kangtai followed the instructions of the local government for the

payment amount and payee. It is the local government's discretion for the land-use rights

payment to be made directly to the Bureau of Land and Resources Bureau of Finance or the Juancheng Bureau of Local Taxation, etc." Intervenors Br. at 5. Intervenors cite no record evidence for this scenario. More importantly, Commerce did not rely on this basis for its determination and therefore the *post hoc* arguments by the Intervenors are inapposite. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-169 (1962) (noting that the court may not accept "post hoc rationalizations for agency action" and agency action may be "upheld, if at all, on the same basis articulated…by the agency itself.").

> ### 4.  *Commerce's Determination that Heze Huayi and Kangtai Cooperated to the Best of Their Ability is Not Supported by Substantial Evidence or Consistent with the Statute*

As demonstrated above, the assertion that Heze Huayi and Kangtai cooperated to the best of their ability by providing self-generated payment tables and self-selected payment slips that cannot be tied to the land-use contracts or land parcels in question is not supported by substantial evidence or consistent with 19 U.S.C. § 1677e(b) and past precedent. The payment slips do not demonstrate that the payments were for land, reflect erratic timing and payment amounts inconsistent with installment contracts, and were paid to [                    ] none of whom were identified as the entity that signed the land-use contracts. Commerce's decision to use the prices provided by Heze Huayi and Kangtai, despite the absence of any basis for those figures in company or other records, "runs counter to the evidence before the agency." *Alabama Aircraft Industries, Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009). If follows that Heze Huayi and Kangtai failed to "cooperate" to the best of their ability for purposes of 19 U.S.C. § 1677e(b).

**D. Commerce Abused its Discretion by Failing to Apply an Adverse Inference in Response to Heze Huayi's and Kangtai's Inadequate Record Keeping**

Commerce argues that its failure to apply an adverse inference is consistent with the statute because the agency "'enjoys broad discretion when considering whether to apply {facts available with an adverse inference},' and it reasonably exercised that discretion in this case." Defendant's Br. at 11-12 (quoting *Appvion, Inc. v. United States*, 100 F. Supp. 3d 1374, 1382 (Ct. Int'l Trade 2015)). However, "Commerce's discretion has limits" and the agency "abuses its discretion, for instance, if it departs from a consistent practice without reasonable explanation." *Goodluck India Limited v. United States*, 11 F.4th 1335, 1342 (Fed. Cir. 2021).

As demonstrated above, Commerce has a longstanding practice, repeatedly affirmed by the Federal Circuit, of applying an adverse inference when parties fail to maintain adequate records, especially information that is necessary for Commerce to carry out its statutory analysis. *See, e.g., Stainless Steel Bar from UK*, IDM at Comment 1; *Hand Trucks from China*, IDM at Comment 1; *Nippon Steel,* 337 F.3d at 1381-82; *Hyundai Electric & Energy Systems Co., Ltd. v. United States*, 15 F.4th at 1090; *Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d at 1297. Furthermore, the "purpose of AFA is to provide respondents with an incentive to cooperate in Commerce's investigations and reviews." *Bio-Lab, Inc. v. United States*, 435 F. Supp. 3d 1361, 1368 (Ct. Int'l Trade 2020). Application of adverse facts available is necessary to "ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." *Viet I-Mei Frozen Foods Co. v. United States*, 839 F.3d 1099, 1109 (Fed. Cir. 2016).

Here, it is undisputed that Heze Huayi and Kangtai failed to maintain adequate records insofar as they lost and failed to provide the land-use right contracts with the Government of China. *See* IDM at 14, Appx0007123 (noting the "record lacks the land-use rights contracts which are required to confirm the price paid for the land parcels"). Accordingly, Commerce's

15

failure to follow its practice in this proceeding and apply an adverse inference in selecting from the facts otherwise available constitutes an abuse of its discretion, is inconsistent the purpose of § 1677e(b), and is not in accordance with law. *See INS v. Yang,* 519 U.S. 26, 32 (1996) ("Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy…could constitute action that must be overturned as 'arbitrary, capricious, {or} an abuse of discretion.").

## CONCLUSION

For the reasons discussed above, this Court should find Commerce's *Final Results* are not in accordance with law and are unsupported by substantial evidence and should, therefore, remand this matter to Commerce with instruction to find that (1) Heze Huayi and Kangtai failed to cooperated to the best of their ability, and (2) to apply an adverse inference in selecting the facts otherwise available when calculating a subsidy benefit under the provision of land-use rights for LTAR program.

Respectfully submitted,

/s/ James R. Cannon, Jr.
James R. Cannon, Jr.
Chase J. Dunn

CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave, N.W., Suite 300
Washington, D.C. 20037
(202) 567-2300

*Counsel to Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation*

Date:   April 4, 2025

16

Court. No. 24-00118

## <u>Certificate of Compliance</u>

The undersigned hereby certifies that the forgoing submission of "Plaintiffs' Reply Brief" filed by Plaintiffs on April 4, 2025, contains 4824 words, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the maximum 7,000 word limitation set forth in the Standard Chambers Procedures.

BY: <u>/s/  James R. Cannon Jr.</u>