C-570-991<br>
Remand<br>
Slip Op. 26-15<br>
~~Business Proprietary Document~~<br>
E&C/OV:  MB<br>
**PUBLIC VERSION**

***Bio-Lab Inc., Innovative Water Care, LLC (F/K/A Clearon Corp.), and Occidental Chemical Corporation v. United States*,
Court No. 24-00118, Slip Op. 26-15 (CIT February 18, 2026)
Chlorinated Isocyanurates from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.      SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination in accordance with the opinion and remand order of the U.S. Court of International Trade (the Court) in *Bio-Lab Inc., Innovative Water Care, LLC (F/K/A Clearon Corp.), and Occidental Chemical Corporation v. United States*, Court No. 24-00118, Slip Op. 26-15 (CIT December 16, 2025) (*Remand Order*).  These final results of redetermination concern the *Final Results* in the countervailing duty (CVD) administrative review of chlorinated isocyanurates (chlorinated isos) from the People's Republic of China (China) covering the period of review (POR) January 1, 2021, through December 31, 2021.[1]

The Court remanded to Commerce for further consideration its decision to rely on facts otherwise available in calculating the subsidy rate for the Provision of Land-Use Rights for Less Than Adequate Remuneration (LTAR) for the Chemical Industry program for Heze Huayi Chemical Co., Ltd. (Heze Huayi) and Juancheng Kangtai Chemical Co., Ltd. (Kangtai). Consistent with the *Remand Order*, we solicited new factual information from Heze Huayi and

---

[1] *See Chlorinated Isocyanurates from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2021,* 89 FR 49149 (June 11, 2024) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).

Kangtai with respect to this program.  After considering this information, we have revised our calculation of the subsidy rates for the land for LTAR program for the POR.

## II.    BACKGROUND

### A.  Commerce's *Final Results*

On January 3 2023, Commerce initiated an administrative review of chlorinated isos from China with respect to eight companies for the POR of January 1, 2021, though December 31, 2021.[2]  On February 24, 2023, Commerce selected Heze Huayi and Kangtai as the mandatory respondents in this CVD administrative review.[3]  On March 1, 2023, Commerce issued the initial CVD questionnaire to the Government of China (GOC) and the mandatory respondents.[4] Between March and November 2023, Heze Huayi and Kangtai submitted timely initial and supplemental questionnaire responses.  However, the GOC did not respond to Commerce's initial CVD questionnaire.

On May 11, 2023, the petitioners[5] timely filed a new subsidy allegation (NSA) related to the Provision of Land-Use Rights for LTAR for the Chemical Industry.[6]  On November 2, 2023, Commerce initiated an investigation with respect to this program,[7] and we issued a questionnaire to the GOC, Heze Huayi, and Kangtai to gather information about it.[8]  Although the GOC did not respond to our questionnaire, on November 14, 2023, Commerce received timely NSA

---

[2] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 88 FR 50 (January 3, 2023).
[3] *See* Memorandum, "Respondent Selection," dated February 24, 2023.
[4] *See* Commerce's Letter, "Countervailing Duty Questionnaire," dated March 1, 2023.
[5] The petitioners are Bio-Lab, Inc., Innovative Water Care, LLC (F/K/A Clearon Corp.), and Occidental Chemical Corporation.
[6] *See* Petitioners' Letter, "Petitioners' Submission of a New Subsidy Allegation," dated May 11, 2023.
[7] *See* Memorandum, "New Subsidy Allegations," dated November 2, 2023.
[8] *See* Commerce's Letters, "New Subsidy Allegations Questionnaire," dated November 2, 2023 (NSA questionnaire).

questionnaire responses from Heze Huayi and Kangtai.[9]  In these responses, both Heze Huayi

and Kangtai informed Commerce that they were unable to provide the land-use rights contracts

associated with their purchases of land-use rights.[10]

On December 7, 2023, Commerce published the *Preliminary Results* of this

administrative review in the *Federal Register*.[11]  In the *Preliminary Results*, we determined that

both Heze Huayi and Kangtai benefited from the Provision of Land-Use Rights for LTAR for the

Chemical Industry program.[12]  To calculate the benefit under this program, we used the prices

paid by Heze Huayi and Kangtai as reported in their questionnaire responses.[13]

On April 3 and 4, 2024, we issued additional supplemental questionnaires regarding the

Provision of Land-Use Rights for LTAR for the Chemical Industry program to Heze Huayi and

Kangtai.[14]  In our NSA Supplemental Questionnaires, we notified Heze Huayi and Kangtai that

"{t}he land-use right purchase contracts we requested in Commerce's NSA questionnaire are

necessary for our determination" and requested that Heze Huayi and Kangtai:

- Provide the land-use right purchase contracts for each land-use rights purchase identified in Exhibit NSA-1 of {each company's} NSA Response.
- Explain the steps {each company} took to determine the price paid for the land-use rights in the absence of the land-use rights contracts.  Submit official

---

[9] *See* Heze Huayi's Letter, "Heze Huayi NSA Questionnaire Response," dated November 14, 2023 (Heze Huayi's NSA QR); *see also* Kangtai's Letter, "Kangtai NSA Questionnaire Response," dated November 14, 2023 (Kangtai's NSA QR).

[10] *See* Heze Huayi's NSA QR at 2 (stating "{s}ince it has been years since the land-use right purchases, {Heze Huayi} currently cannot locate the land-use right purchase contracts per this request"); *see also* Kangtai's NSA QR at 2 (stating "{s}ince it has been several years since its land-use right purchase, Kangtai currently cannot locate the land-use right purchase contracts").

[11] *See Chlorinated Isocyanurates from the People's Republic of China:  Preliminary Results of the Countervailing Duty Administrative Review and Rescission of Review in Part; 2021,* 88 FR 85214 (December 7, 2023) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM).

[12] *See Preliminary Results* PDM at 25; *see also* Memorandum, "Preliminary Results Calculations for Heze Huayi Chemical Co., Ltd.," dated November 30, 2023 (Heze Huayi's Preliminary Analysis Memo) at 4-5 and Attachment II; and Memorandum, "Preliminary Results Calculations Juancheng Kangtai Chemical Co., Ltd.," dated November 30, 2023 (Kangtai's Analysis Memo) at 4 and Attachment II.

[13] *See* Heze Huayi's Preliminary Analysis Memo at 4-5 and Attachment II; *see also* Heze Huayi's NSA QR at Exhibit NSA-1; Kangtai's Analysis Memo at 4 and Attachment II; and Kangtai's NSA QR at Exhibit NSA-1.

[14] *See* Commerce's Letters, "Heze Huayi's Supplemental Questionnaire," dated April 3, 2024; and "NSA Supplemental Questionnaire," dated April 4, 2024 (collectively, NSA Supplemental Questionnaires).

documentation that {each used} in the course of {its} normal business activities supporting {its} response.

- Explain how {each company's} accounting system records and maintains information relating to each land-use rights purchase. Provide documentation supporting {its} response.
- Indicate the manner of payment for each land-use rights purchase (*i.e.*, lump sum or (monthly/yearly) installments) and provide a summary of the terms for each land-use rights purchase. Provide documentation supporting {the} response.
- Tie each of the land-use rights purchases to {each company's} 2021 financial statements… including screenshots of the applicable ledger(s).[15]

On April 17 and 18, 2024, we received timely responses from Heze Huayi and Kangtai.[16] In their responses, neither Heze Huayi nor Kangtai provided the land-use rights contracts.[17] However, in accordance with Commerce's instructions, Heze Huayi and Kangtai provided documentation used to determine the price paid for the land use rights in the absence of the purchase contracts, and they demonstrated how these payments tie to their 2021 audited financial statements.[18] Further, both companies indicated that they made these payments in installments, and they described how they recorded these installment payments in their accounting systems.[19]

---

[15] *See* NSA Supplemental Questionnaires at 5.

[16] *See* Heze Huayi's Letter, "Heze Huayi 3rd Supplemental Questionnaire Response," dated April 17, 2024 at 2. (Heze Huayi's Supplemental NSA QR); *see also* Kangtai's Letter, "Kangtai Supplemental Questionnaire Response," dated April 18, 2024 at 1-2 (Kangtai's Supplemental NSA QR) (again stating, "since it has been years from its land-use right purchase Kangtai currently cannot locate the land-use right purchase contracts").

[17] *Id.*

[18] *See* Heze Huayi's Supplemental NSA QR at Exhibits SQR at SQ3-2, SQ3-3, and SQ3-4; *see also* Kangtai's Supplemental NSA QR at Exhibits SQ4-1 and SQ4-2.

[19] *See* Heze Huayi's Supplemental NSA QR at 2 (stating "Heze Huayi debited the intangible assets ledger when it made payments for land-use right purchases. The payments were made in installments based on the negotiated payment process"); *see also* Kangtai's Supplemental NSA QR at 2 (stating "Kangtai debited the payment amount related to the purchase of land-use right in the 'account prepaid' … and then transferred to 'intangible assets'" and "Kangtai made payments for the land-use right purchases by several installments").

We received comments from interested parties on our *Preliminary Results*,[20] as well as on the additional land-use program information.[21]  In its comments, the petitioners argued that

> When Commerce requested the contracts for a second time in post-preliminary supplemental questionnaires, stressing that they are necessary for its determination, Heze Huayi and Kangtai again failed to supply them.  Instead, Heze Huayi and Kangtai provided payments slips, which cannot substitute the land-use contracts and are unsuitable support for the alleged payment amounts for the land-use rights. Heze Huayi and Kangtai provided { }. Furthermore, the payment slips document that Heze Huayi's and Kangtai's payments were { }.  { } {t}hey are not payments for land-use rights spread over time in installments but may include payments made for a variety of other reasons.
> . . .
> Kangtai supplied documents to support its claim that it rented a parcel of land from a private party.  These documents, however, contain serious discrepancies, calling into question their evidentiary value and whether Kangtai indeed rented this parcel of land from a private party and was not granted use from the government or any other party without remuneration.[22]

On June 11, 2024, Commerce published the *Final Results* of this administrative review in the *Federal Register*.[23]  In Commerce's *Final Results* IDM, we determined that it was appropriate to accept the documentation provided by Heze Huayi and Kangtai.  We stated that:

> We disagree with the petitioners and find that the application of AFA to the provision of land-use rights for LTAR for the chemical industry for Heze Huayi and Kangtai is not warranted because both companies have cooperated to the best of their abilities in this review.  However, because Heze Huayi and Kangtai were unable to provide the land use rights purchase contracts for the land in question, and those documents are necessary to our determination, we find that the application of facts available is appropriate for purposes of these final results, in accordance with section 776(a)(1) of the Act.  As facts available, we have accepted the payment documentation reported by both respondents for their purchases of the land-use rights, for the reasons discussed further below.
> . . .
> Heze Huayi stated that "Heze Huayi determined the total amount paid for land-use rights based on the payment slips."  Kangtai stated that "since it has been years

---

[20] *See* Petitioners' Letter, "Case Brief of Bio-Lab, Inc, Innovative Water Care, and Occidental Chemical Corporation," dated January 16, 2024; and "Heze Huayi and Kangtai's Letter, "Respondents Rebuttal Brief," dated January 25, 2024.

[21] *See* Petitioners' Letter, "Additional Case Brief of Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation," dated May 3, 2024 (Petitioners' Additional Case Brief); and Heze Huayi and Kangtai's Letter, "Rebuttal Brief," dated May 8, 2024.

[22] *See* Petitioners' Additional Case Brief at 2-14.

[23] *See Final Results*.

from its land-use right purchase, Kangtai currently cannot locate the land-use right purchase contracts. Kangtai determined the total amount paid for the land-use right based on the payment slips." In accordance with Commerce's instructions, Heze Huayi and Kangtai provided documentation used to determine the price paid for the land use rights in the absence of the purchase contracts, and they demonstrated how these payments tie to their 2021 audited financial statements. Further, both companies indicated that they made these payments in installments, and they described how they recorded these installment payments in their accounting systems.

As noted above, the record does not have the land-use rights purchase contracts with the price paid for the land-use rights, which we informed both respondents is information necessary to our determination. Specifically, the land-use rights purchase contracts normally provide information regarding the owner of the land, the terms and duration of the contract, the location, the type of land-use right, the area, and, crucially, the price. While the respondents supported the reported payments with self-generated documentation from their accounting systems, the record is devoid of much of this information, including any third-party documentation demonstrating that the reported amounts are the contracted values of the land purchases. Therefore, necessary information is missing from the record in accordance with section 776(a)(1) of the Act, namely the land-use rights purchase contracts for the parcels of land held by Heze Huayi and Kangtai.

Therefore, we find it appropriate to use the facts otherwise available regarding the price paid for the land-use rights, pursuant to section 776(a) of the Act. As facts available, we are accepting the documentation provided by Heze Huayi and Kangtai in support of the reported prices paid for their land acquisitions.[24]

In accordance with the *Final Results* IDM, to calculate the benefit of the Provision of Land-Use Rights for LTAR for the Chemical Industry program, we used the price paid by Heze Huayi and Kangtai as reported in their questionnaire responses.[25] This information resulted in subsidy rates for the Provision of Land-Use Rights for LTAR for the Chemical Industry program for Heze Huayi and Kangtai of 1.69 percent and 2.33 percent, respectively.[26] This litigation ensued.

---

[24] *See Final Results* IDM at Comment 1 (internal citations removed).
[25] *See* Memorandum, "Final Results Calculations for Heze Huayi Chemical Co., Ltd," dated June 4, 2024 (Heze Huayi's Final Analysis Memo) at 2 and Attachment II; *see also* Kangtai's Analysis Memo at 4 and Attachment II.
[26] *See Final Results* IDM at 6.

### B. *Remand Order*

On February 16, 2026, the Court issued its *Remand Order*.[27]  In the *Remand Order*, the

Court held that Commerce's application of facts available for the *Final Results* was not

supported by substantial evidence.  Specifically, the *Remand Order* states:

> Much of the information submitted by Heze Huayi and Kangtai in lieu of the land-use rights purchase contracts (the facts otherwise available on which Commerce relied) are in Chinese and are not translated into English. Commerce's regulations establish that questionnaire responses submitted in a foreign language "must be accompanied by an English translation of the entire document or of only pertinent portions, where appropriate, unless the Secretary waives this requirement for an individual document."  19 C.F.R. § 351.303(e).  Prior to submitting the response, "{a} party must obtain the Department's approval for submission of an English translation of only portions of a document{.}"  *Id.*  There is no evidence on the record before the Court that Heze Huayi and Kangtai requested or received approval from Commerce to submit only portions of the documents in English.
>
> In the interest of accuracy and obtaining factually correct information on the record, the Court concludes that Commerce's reliance on facts otherwise available is unreasonable because the supplemental documents consisted of faulty records with incomplete translations and a lack of correlation with the missing information on the record.  The Court remands for Commerce to reconsider the record, at a minimum to request that the documents relied upon as facts otherwise available are translated from Chinese into English.  If Commerce decides to re-open the record to accept newly translated documents, the Court suggests that Commerce should consider accepting the land-use rights purchase contracts on the record.  During oral argument, it was brought to the Court's attention that the land-use rights purchase contracts are now available.  This would allow Commerce to make a new determination on remand and to verify the information regarding the prices paid by Heze Huayi and Kangtai.  Because Commerce based its determination of facts otherwise available on the missing land-use rights purchase contracts and the faulty supplemental information provided by Heze Huayi and Kangtai, the Court concludes that Commerce's determination is not in accordance with law and is not supported by substantial evidence.[28]

Accordingly, pursuant to the *Remand Order*, Commerce reopened the record and issued

supplemental questionnaires to Heze Huyai and Kangtai in which we requested complete

translations of the previously-submitted documentation, along with the land-use rights purchase

---

[27] *See Remand Order*.
[28] *Id.* at 16.

contracts referenced in the *Remand Order*.[29]  On March 25, 2026, Heze Huayi and Kangtai

submitted timely responses to our supplemental questionnaires.[30]

### C.  *Draft Results of Redetermination*

Commerce released its Draft Remand on April 9, 2026,[31] in which we revised the

countervailable subsidy rate for the Provision of Land-Use Rights for LTAR for the Chemical

Industry program for each company using the contract prices for the land-use rights instead of

the prices paid by Heze Huayi and Kangtai.  As a result of this change, the revised subsidy rates

for this program were 1.70 percent for Heze Huayi and 2.36 percent for Kangtai, respectively.

When these rates were incorporated into the companies' total subsidy rates, Heze Huayi's

subsidy rate became 3.13 percent, and Kangtai's subsidy rate became 3.99 percent.

On April 13, 2026, the petitioners submitted timely comments on the Draft Remand.[32]

## III.    ANALYSIS

As discussed above, the Court held in the *Remand Order* that Commerce's decision to

apply facts available to Heze Huayi and Kangtai was not supported by substantial evidence or in

accordance with the law.  Therefore, following the *Remand Order*, Commerce reopened the

record of the administrative review and solicited from Heze Huayi and Kangtai the information

necessary to accurately calculate the countervailable subsidy rates for each company.[33]  In

particular, we instructed Heze Huayi and Kangtai to provide the purchase contract for each land-

---

[29] *See* Commerce's Letters, "Supplemental Questionnaire," dated March 20, 2026 (Remand Supplemental Questionnaires).
[30] *See* Heze Huayi's Letter, "Supplemental Questionnaire," dated March 25, 2026 (Heze Huayi's Remand Supp QR); *see also* Kangtai's Letter, "Supplemental Questionnaire," dated March 25, 2026 (Kangtai's Remand Supp QR).
[31] *See* Draft Results of Redetermination Pursuant to Court Remand, *Bio-Lab Inc., Innovative Water Care, LLC (F/K/A Clearon Corp.), and Occidental Chemical Corporation v. United States,* Court No. 24-00118, Slip Op. 26-15 (CIT February 18, 2026), dated April 9, 2026 (Draft Remand).
[32] *See* Petitioners' Letter, "Petitioners' Comments on Draft Results of Redetermination," dated April 13, 2026 (Petitioners' Draft Remand Comments).
[33] *See* Remand Supplemental Questionnaires.

use rights purchase identified in their previous questionnaire responses, translated into English, and also to provide complete English translations for all documentation previously provided.[34]

Based on Heze Huayi and Kangtai's responses to these questionnaires, we calculated a revised countervailable subsidy rate for the Provision of Land-Use Rights for LTAR for the Chemical Industry program for each company using the contract prices for the land-use rights instead of the prices paid by Heze Huayi and Kangtai.[35]  The revised subsidy rates for this program are 1.74 percent for Heze Huayi and 2.36 percent for Kangtai, respectively.  When these rates are incorporated into the companies' total subsidy rates, Heze Huayi's subsidy rate becomes 3.17 percent, and Kangtai's subsidy rate becomes 3.99 percent.  Further, because the subsidy rate for the non-selected company under review, Sincere Cooperation Material, is based on the rates calculated for Heze Huayi and Kangtai, we have also revised Sincere Material's final subsidy rate, to 3.31 percent.[36]

## IV.    INTERESTED PARTY COMMENTS

As noted above, Commerce released the Draft Remand on April 9, 2026.[37]  The petitioners submitted comments on April 13, 2026, and we have addressed these comments below.[38]

---

[34] *Id.* at 3.
[35] *See* Memorandum, "Final Remand Calculation for Heze Huayi Chemical Co., Ltd," dated concurrently with this final remand (Heze Huayi Final Analysis Memo); *see also* Memorandum, "Remand Calculation for Juancheng Kangtai Chemical Co., Ltd.," dated April 9, 2026.
[36] As explained in the *Preliminary Results*, Commerce applied "the weighted average of the net subsidy rates calculated for Heze Huayi and Kangtai using publicly-ranged sales data submitted by those respondents to the non-selected company." *See Preliminary Results*, 88 FR at 85215; unchanged in *Final Results*.
[37] *See* Draft Remand.
[38] *See* Petitioners' Draft Remand Comments.

**Comment 1:   Whether to Apply AFA to Heze Huayi and Kangtai**

*Petitioners' Comments*

The following is a verbatim summary of argument submitted by the petitioners. For further details, *see* the Petitioners' Draft Remand Comments at 4-15.

> In the underlying administrative review, Heze Huayi and Kangtai failed to provide contracts signed with the Government of China (GOC) for the purchase of certain land-use rights, which were necessary to determine the total price paid for the land-use rights.  In lieu of the contracts, Commerce accepted as facts available payment slips provided by Heze Huayi and Kangtai, which they asserted reflected the total amount paid for the land-use rights.  In its *Remand Order*, however, the Court held that "the documents submitted by Heze Huayi and Kangtai as substitutes for the missing land-use rights purchase contracts" failed to "establish that the prices alleged by Heze Huayi and Kangtai are accurate or an acceptable substitute for the land-use rights purchase contracts."  The Court indicated that Commerce, on remand, could obtain fully translated payment records and the land-use rights contracts in order to "*verify the information regarding the prices paid by Heze Huayi and Kangtai.*"
>
> Commerce's *Draft Remand Results* responding to the Court's *Remand Order* are not supported by substantial evidence or in accordance with law.  The land-use contracts submitted by Heze Huayi and Kangtai on remand contradict the payment records previously submitted.  The payment records cannot be reconciled with the contracts – and vice versa.  Stated differently, the alleged "prices" based on the total payments do not reconcile with the contract prices.  Nor do the payment records support the alleged contract prices.  Nor is there any third-party or independent evidence to show that the land-use rights were paid for at all.
>
> The record as a whole shows that each respondent "failed to cooperate by not acting to the best of its ability to comply with a request for information," within the meaning of {section 776(b) of the Act}.  Without evidence showing that the alleged contract prices were actually paid, the draft remand results relying on those contracts are not supported by substantial evidence.  Commerce's reliance on the contracts is especially troubling given that Heze Huayi and Kangtai initially reported inaccurate payment information that materially overstated the contract values.[39]

**Commerce's Position:**  We disagree with the petitioners' arguments and find that the application of AFA to the Provision of Land-Use Rights for LTAR for the Chemical Industry program for Heze Huayi and Kangtai is not warranted because the statutory conditions for

---

[39] *See* Petitioners' Draft Remand Comments at 2-3.

application of facts available are not satisfied. Both respondents provided all information requested by Commerce, including the land use rights purchase contracts and the translated payment documentation.[40] As a result, we find that the application of facts available within the meaning of section 776(a) of the Act is not appropriate for purposes of this final remand redetermination and, consequently, that the statutory conditions for the application of AFA under section 776(b) are not satisfied.

Sections 776(a)(1) and 776(a)(2) of the Act provide that Commerce shall, subject to section 782(d) of the Act, apply "facts otherwise available" if necessary information is not available on the record or, if an interested party or any other person: (A) withholds information that has been requested by Commerce; (B) fails to provide such information by the deadlines for such information or in the form and manner requested; (C) significantly impedes a proceeding under the Act; or (D) provides information which cannot be verified, Commerce shall use, subject to sections 782(d) and (e), facts otherwise available in reaching the applicable determination. Further, section 776(b) of the Act provides that, if Commerce finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information, Commerce may use an inference adverse to the interests of that party in selecting from among the facts otherwise available.

In the Remand Supplemental Questionnaires, we requested that Heze Huayi and Kangtai submit the land use rights contracts for each land use rights purchase identified in their previous submissions and complete English translations for the payment documentation supporting the land use rights payments.[41] In response, both Heze Huayi and Kangtai provided the requested

---

[40] *See* Heze Huayi's Remand Supp QR; *see also* Kangtai's Remand Supp QR.
[41] *See* Remand Supplemental Questionnaires.

11

information by the requisite deadlines.[42]  Therefore, the respondents timely complied with Commerce's requests for information, did not significantly impede the proceeding, and did not provide information that cannot be verified.  In addition, the record contains the necessary record information to calculate a benefit under this program.  Accordingly, there is no gap in the record that would necessitate the use of facts available, nor are the other statutory factors that would prompt the use of facts available present, within the meaning of section 776(a) of the Act.

Section 776(b) of the Act provides that, if Commerce finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information, it may use an inference that is adverse to the interest of that party in selecting from the facts otherwise available.  In this proceeding, Heze Huayi and Kangtai have fully cooperated with our requests for information.  Thus, because both Heze Huayi and Kangtai provided the requested information in a timely manner, there is no basis to apply facts otherwise available, and accordingly no need to draw adverse inferences from those facts under section 776(b) of the Act.[43]

The petitioners cite to *Essar* in support of their argument to apply AFA to Heze Huayi and Kangtai.[44]  In *Essar*, the respondent provided false statements and withheld critical information from Commerce by failing to report the existence of a production facility.[45]  Unlike the respondent in *Essar*, both Heze Huayi and Kangtai have cooperated with our requests for information and provided all requested information both in the underlying review and in this remand proceeding.  Further, neither Heze Huyai nor Kangtai made false statements, nor did

---

[42] *See* Heze Huayi's Remand Supp QR; *see also* Kangtai's Remand Supp QR.
[43] *Id.*
[44] *See* Petitioners' Draft Remand Comments at 5 (citing *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 2176 (Fed. Cir. 2012) (*Essar*)).
[45] *See Essar.*

either company deliberately withhold critical information.  As noted above, both Heze Huayi and Kangtai were unable to provide the land use rights purchase contracts during the underlying review as neither company had these contracts within their possession at that time.[46]  However, both companies fully complied with Commerce's request to provide additional information in order to support the prices paid for the land use rights, including providing payment slips generated in the normal course of business and reconciling the price Heze Huayi and Kangtai paid to their audited 2021 financial statements.[47]  For these reasons, in the *Final Results*, we determined that no basis to find that either company failed to act to best of its ability in responding to our requests for information or that the application of AFA was warranted. Similarly, during this remand proceeding, Heze Huayi and Kangtai fully cooperated with Commerce's request for information and submitted all of the requested information, which they subsequently were able to obtain.[48]  Therefore, the facts present here are materially distinct from *Essar*.

The petitioners also cite *Ozdemir Boru San* to support their AFA argument.  However, the underlying facts in *Ozdemir Boru San* also differ from the facts present here.[49]  In *Ozdemir Boru San*, the respondent reported that it did not receive benefits from a certain program, but, at verification, Commerce discovered that the respondent was eligible for, and received, benefits from the subsidy program.[50]  In contrast, both Heze Huayi and Kangtai reported purchases of

---

[46] *See* Heze Huayi's NSA QR at 2 (stating "{s}ince it has been years since the land-use right purchases, {Heze Huayi} currently cannot locate the land-use right purchase contracts per this request"); *see also* Kangtai's NSA QR at 2 (stating "{s}ince it has been several years since its land-use right purchase, Kangtai currently cannot locate the land-use right purchase contracts").

[47] *See* Heze Huayi's Supplemental NSA QR; *see also* Heze Huayi's Remand Supp QR; Kangtai's Supplemental NSA QR; and Kangtai's Remand Supp QR.

[48] *See* Heze Huayi's Remand Supp QR; *see also* Kangtai's Remand Supp QR.

[49] *See* Petitioners' Draft Remand Comments at 5-6 (citing *Ozdemir Boru San. Ve Tic. Ltd. Sti. v. United States*, 273 F.Supp.3d 1225 (CIT 2017) (*Ozdemir Boru San*)).

[50] *See Ozdemir Boru San*.

land that may be subject to the Provision of Land-Use Rights for LTAR for the Chemical Industry program in their responses to our questionnaires.  Therefore, the findings in *Ozdemir Boru San* have no bearing here.

Further, the petitioners contend that the application of AFA is appropriate for Provision of Land-Use Rights for LTAR for the Chemical Industry program because the information submitted by Heze Huayi and Kangtai is unreliable and contradictory.  Specifically, the petitioners highlight that the amounts that Heze Huayi paid for each of the three parcels of land exceeds the total amount for the land use rights listed in the contracts, and they also question the timing of the payments made by Heze Huayi.[51]  Additionally, the petitioners state that Kangtai's "contract price for the land-use rights is lower than the payment information."[52]  With respect to the differences between the contract and the actual amount paid, although the record indicates that the amounts that Heze Huayi and Kangtai paid for the land-use rights exceed the contract price, we do not find that this warrants the application of AFA because we can determine from these payments that Heze Huayi and Kangtai paid, at least, the amount specified in the contract based on Heze Huayi's and Kangtai's submission of  payment schedules, payment slips, and accounting ledgers for the land purchases (*i.e.*, the payments exceed the contract prices).  Moreover, the contracts contemplate scenarios in which the recipient of the land use rights may pay more than the value of the contract.  Specifically, Article 9 of Hexe Huayi's [     ] land use right contract states:

[

].[53]

---

[51] *See* Petitioners' Draft Remand Comments at 9-10.
[52] *Id.* at 12.
[53] *See* Heze Huayi's Remand Supp QR at SQ1-1.

14

Similarly, article 10 of Heze Huayi's [                    ] land use rights contracts states:

[

].[54]

Additionally, article 10 of Kangtai's land use rights purchase contract states

[

].[55]

These articles clearly demonstrate that installment payment plans include interest payments as well.  Heze Huayi and Kangtai demonstrated that they paid for all three land use rights in installments.  Therefore, it is unsurprising that Heze Huayi and Kangtai paid more than the face value of the contracts, given that those contracts required the payment of interest with each installment of the principal payment.[56]  Further, we did not request additional information from Heze Huyai or Kangtai, and, thus, we have no basis to find that either company withheld information or otherwise failed to cooperate here.

Although the petitioner takes issue with the fact that the amounts paid by Heze Huayi and Kangtai cannot be reconciled with the governing contracts,[57] we disagree that this warrants the application of AFA.  In the *Final Results*, we noted that the prices paid by Heze Huayi and Kangtai reconciled to the payment slips provided by both companies and also to their 2021 audited financial statements and, therefore, there was no basis to conclude that the companies

---

[54] *Id.*
[55] *See* Kangtai's Remand Supp QR at Exhibit SQ1-1.
[56] *See* Heze Huayi's Remand Supp QR at SQ1-1; *see also* Kangtai's Remand Supp QR at Exhibit SQ1-1.
[57] *See* Petitioners' Draft Remand Comments at 10 and 13.

failed to cooperate to the best of their ability.[58]  In the *Remand Order*, the Court directed us to

reopen the record to obtain, at a minimum, translations of the documents relied upon as fact

available, and also consider obtaining the land-use rights purchase contracts, "*{i}n the interest of

accuracy and obtaining factually correct information.*"[59]  Accordingly, Commerce requested

from both respondents the land-use rights purchase contracts and complete translations of the

documentation previously provided, but we did not request a payment-by-payment reconciliation

to the land-use contracts.[60]  Absent such a request, it would be inappropriate to apply AFA to

Heze Huayi and Kangtai for a failure to conduct a reconciliation exercise that was never

requested; further, doing so would frustrate the Court's concern that this remand redetermination

produce results based on accurate and factually-correct information.  The information contained

on the record of this remand proceeding indicates that Heze Huayi and Kangtai made payments

consistent with the terms and annexes of the land-use rights purchase contracts, and is lacking

any contradicting information that would otherwise cause Commerce to question the veracity or

accuracy of the documentation provided.  Rather, for these final results of redetermination, we

are relying on the purchase values identified in official government contracts, which are stamped

with official seals and dated and which we consider to be reliable and accurate, as the basis for

our calculations.

　　With respect to the timing of Heze Huayi's and Kangtai's payments, we find these

arguments unpersuasive.  The petitioners correctly note that some of Heze Huayi's and Kangtai's

payments were before the land use rights purchase contracts were signed.[61]  However, these

payments were noted in the contracts themselves.  Annex 4 of Heze Huayi's [    ] land use right

---

[58] *See Final Results* IDM at Comment 1.
[59] *See Remand Order* at 16-17 (emphasis added).
[60] *See* Heze Huayi's Remand Supp QR; *see also* Kangtai's Remand Supp QR.
[61] *See* Petitioners' Draft Remand Comments at 9-10.

contract states that "[

]."[62]

Furthermore, Annex 4 of Kangtai's land use rights contracts state that "[

]."[63]  Therefore, the payments before the signing of

the contracts do not appear to be meaningful, such that they undermine the validity of the

contracts themselves, and because such payments are contemplated in the annexes of the

contracts themselves.  Given that the record does not demonstrate that Heze Huyai or Kangtai

withheld information or otherwise failed to cooperate, Commerce finds that the use of facts

otherwise available, and relying on an adverse inference in selecting those facts, is not

warranted.

**Comment 2:   Whether to Revise Commerce's Calculation of the Land for LTAR for the
                          Chemical Industry Program**

*Petitioners' Comments*

      The petitioners did not provide a summary of their arguments.  For further information,

*see* Petitioners' Draft Remand Comments at 9 and 12.

**Commerce's Position**:  After reevaluating the information in the contracts, we agree with the

petitioners that, for one of Heze Huayi's land use right purchases, we should use only the value

of the land purchase price to calculate the benefit amount for the Provision of Land-Use Rights

for LTAR for the Chemical Industry program.  However, we disagree that we should revise our

calculations for all land-use rights purchases made by Heze Huayi and Kangtai.[64]

---

[62] *Id.* at Exhibit SQ1-1.
[63] *See* Kangtai's Remand Supp QR. at Exhibit SQ1-1.
[64] *See* Petitioners' Draft Remand Comments at 2.

17

The petitioners argue that, for Heze Huayi's first parcel, Commerce overstated the contract amount by including "[                    ]" and [    ] installment payments of [

].[65]  After further consideration, we agree that we have double-counted parts of the land use rights transfer fee by including these amounts in our calculations.  Article 7 of this land use rights purchase contract does not indicate that the "[                    ]" is separate from the land use rights transfer fee; rather, the contract identifies the total value of the land use right transfer fee and then immediately following, as a parenthetical, the lesser amount of "([                    ])."[66]  Given that this revenue appears to be a portion of the land use rights transfer fee,[67] we revised our calculations to only include the land use rights transfer fee of [      ] RMB.[68]

Additionally, Article 9 of the same land use rights purchase contract states that the land use rights transfer fee "[

].[69]  Because these installment payments are put toward the land use right transfer fee, we find that the installment payments are a portion of the land use right transfer fee and, by including them in the contract amount, we have also double-counted these payments.  Therefore, we have revised our benefit calculation for Heze Huayi's first parcel to only include the land use rights transfer fee and remove any fees that appear to be double counted.

The petitioners contend that Commerce also overstated the contract prices for Heze Huayi's second and third land parcels and Kangtai's land parcel by including the "[

---

[65] *See* Petitioners' Draft Remand Comments at 9, fn 18.
[66] *See* Heze Huayi's Remand Supp at Exhibit SQ1-1 ("The land use right transfer fee for the land under this contract is RMB [            ] per square meter; the total amount is RMB [
]. ([                    ]).")
[67] *Id.*
[68] *See* Heze Huayi Final Analysis Memo.
[69] *See* Heze Huayi's Remand Supp at Exhibit SQ1-1.

18

]" amounts in the total contract price for these parcels.[70]  As evidence, the petitioners cite addenda in the contracts for Heze Hauyi's second and third land use right purchases and Kangtai's land use right purchase which stipulates the payment of a "[

]" amount.[71]  According to these addenda, for each land use rights purchase, the respondent companies were also required as per the terms of the contracts to pay a

[                    ].  However, we disagree that this [               ] amount is a mere fee; rather, it we find that it is not only a significant, but also an integral, part of the contract itself. Therefore, we find that it is appropriate to include it as a part of the contract price for the purchase of the land-use rights.

We acknowledge the petitioners' argument that the benchmark used to calculate the benefit does not include comparable [                    ].[72]  However, the petitioners cite no record evidence to support this assertion.  In the absence of record information indicating that the benchmarks do not include similar amounts, and because we find that disputed portion is an integral part of the land-use purchase price, we continue to find that it is appropriate to use the total contract price, including the [               ] amount, as the basis to determine the benefit for this program in these final results of redetermination.

## V.    FINAL RESULTS OF REDETERMINATION

Consistent with the *Remand Order*, we revised our calculation of the countervailable subsidy rates for Heze Huayi and Kangtai, as well as the non-selected company under review, as well as the subsidy rate for the non-selected company under review, Sincere Cooperation Material, which is based on the rates calculated for Heze Huayi and Kangtai.  Based on these

---

[70] *See* Petitioners' Draft Remand Comments at 9 and 12.
[71] *See* Heze Huayi's Remand Supp QR at Exhibit SQ1-1; *see also* Kangtai's Remand Supp QR at Exhibit SQ1-1.
[72] *See* Petitioners' Draft Remand Comments at 9 and 12.

changes, Commerce finds in these final results of redetermination that the following

countervailable subsidy rates exist for the POR January 1, 2021, though December 31, 2021.

| Company | Subsidy Rate (percent *ad valorem*) |
| --- | --- |
| Heze Huayi Chemical Co., Ltd. | 3.17 |
| Juancheng Kangtai Chemical Co., Ltd. | 3.99 |
| Rate for Non-Selected Company Under Review | |
| Sincere Cooperation Material | 3.31 |

Should the Court affirm these final results of redetermination, Commerce intends to

publish a notice of amended final results in the *Federal Register* and issue appropriate customs

instructions to U.S. Customs and Border Protection, consistent with the discussion above.

5/4/2026

X  *Chris J. Abbott*

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance.